### BELLINGER *v.* The UNION BURIAL-GROUND SOCIETY.

A sale of a lot by a plan on which a public street is laid out as one of the boundaries, and a conveyance describing the lot as a lot on W. street, as the same shall be opened, and bounded on the south by W. street, does not create a covenant on which the grantors are liable, where the street was subsequently vacated by legislative authority, and the grantors entered upon and occupied the land over which it was laid out.

IN error from the District Court of Philadelphia.

*March* 9. The defendants being the owners of a large lot, offered it for sale at auction, exhibiting a plan, in which part of it was subdivided into small building-lots, bounded by Washington street, laid out over the lot. Smith purchased one of the lots, and his conveyance described the lot as "on Washington street, as the same shall hereafter be opened, . . . . and bounded on the south by said Washington street." The plaintiff held by mesne conveyances from Smith. Subsequently Washington street, which had been laid out by the public authorities, but never opened, was vacated by an ordinance of the district, under authority from the legislature, and by an act of Assembly the defendants were authorized to extend their burial-ground over the land, which they did, and erected a wall at either end. The plaintiff brought an action of covenant on the deed, and gave evidence of the diminution of the value of his land, by reason of the vacation of the street.

SHARSWOOD, P. J., directed a verdict for defendants.

*G. W. Biddle,* for plaintiff in error.—The language of the deed created a covenant that such a street should exist, and, however it has ceased to be performed, the defendants are liable for the breach. It was so held in Parker *v.* Smith, 17 Mass. 413; Lewis St. 2 Wend. 472; Wyman *v.* The Mayor, 11 Wend. 486; 6 Pet.

431.  In 9 W. 9, the same effect was given to a sale, by a plan on which an alley was laid out.  And in 3 Barr, 21, such a statement was held to amount to a representation, which avoided the contract if untrue.  The defendants are, therefore, estopped from denying there was such a street, and are liable if it has ceased to exist.

*St. Geo. T. Campbell*, contrà.—The street, though laid out, could only be opened by proceedings in the Quarter Sessions.  This the defendants did not agree should be done.  The words are merely those of description, not amounting to or intended for a covenant, which is not to be implied: 16 S. & R.  113; 8 Miss. 667.  But if this were not so, the vacation being by legislative authority, the defendants are not liable: 8 W. & S. 85; 6 Ad. & El. N. S. 107; 5 Cow. 538; 7 Ib. 585.

*March* 19.  COULTER, J.—The defendants were originally the owners of the ground on which Washington street was located, and they designated that street, being merely an extension of the plan of Southwark.  The street, however, was adopted by the commissioners appointed, under the act of 1787, to lay out such and so many streets, lanes, &c., where proper streets, &c., are not already laid out.  A plan or plot was made by the commissioners, which was duly recorded, as required by law; and Washington street became a public street or highway, subject to the eminent domain or transcendental authority of the state, in relation to highways.  This was the state of things when Smith bought the lot from the defendants, described as bounded by Washington street, and which lot has passed to and been vested in plaintiff by various intermediate conveyances.

It is true, the street was not actually open when Smith purchased, because the act of Assembly provided that those streets laid out, need not be all actually opened until certain other proceedings were had, which showed that the public authorities considered the opening proper.  But the act declared, that from the time the streets were laid out and the plan recorded, in pursuance of the statute, the streets should be public highways.  The words in the deed to Smith, upon which this action is founded, are as follows, to wit: "Bounded on Washington street, as the same shall hereafter be laid out," which words obviously mean, "as the same shall hereafter be opened, if it ever is so done, by the constituted authorities."  It was then laid out according to law, and

the evidence of it was duly recorded. It was a matter as much within the knowledge of one party as the other, and not within the power or control of either. But did the words used in the deed amount to a covenant, or can a covenant be squeezed out of them? Every lot granted must have a boundary to fix its locality; and what boundary so fit and proper as a street, laid out, marked and declared a public highway, according to law? It was not then actually open, but to be opened when public convenience required. This both parties knew, for it was the law—and all people are supposed to know the law on the subject about which they contract. That public convenience should demand its being opened, or that public convenience might require it to be vacated, were events *in futuro*, alike inscrutable and inaccessible to both the contracting parties, and governed by a power overreaching their contract. Each was, therefore, governed by his own knowledge and judgment, and not by any averment or suggestion of the other, nor by anything supposed, on the part of either; the words must therefore, in all fairness, be understood to have been intended to fix the terminus of the grant, and not a covenant that the public should keep the street open for ever. It would be a novel legal doctrine to broach over the broad lands of the state, that if one sold land bounded by a public highway, he might be sued for covenant broken, if the public, in any time to come, should vacate the highway. The parties describe the subject of the contract under an existing state of things, as known and accessible to everybody. But this does not amount to a covenant that this state of things shall be perpetual.

The cases cited from New York are not in point; certainly do not decide that such words as used here amount to a covenant. The principle upon which those cases go is this, that the grantor himself, or those claiming under him, shall do nothing himself inconsistent with, or opposed to the interest intended to be granted, and that words of description may in that way operate as an estoppel, to prevent the grantor or his heirs from doing what is inconsistent with good faith and obstructs the enjoyment of that which he has granted. It was the public who vacated Washington street, by virtue of the transcendent power of the legislature over highways. They may divest them, vacate them, obstruct them, and are answerable to no one. It is not pretended that the defendants had any agency in vacating the street; or that they have been guilty of any act amounting to bad faith, under this grant, to those under whom the plaintiff claims; nor that, in any way or manner, did

they prevent the street being actually opened.    The construction contended for by the plaintiffs, of the deed of· sale to Smith, would be forcing a covenant on the defendants which could not have been within the contemplation of the parties, and the words of which, neither in law or common parlance, will carry or convey such intent.    That a party may covenant against equivocal and uncertain future events, and make himself responsible for the acts of others, is true.    But he must do it in clear unequivocal language, either general or special : the safety of parties contracting requires the application of such a rule.

The general presumption would be against it; and, therefore, such implication of a covenant is not to be founded on mere words of description, fulfilled by an existing state of things known to all persons concerned, and to everybody else; and to which, therefore, the parties must be supposed to have referred.    The documents which were given in evidence, that is, the act of the legislature on the subject, the public acts of the authorities of Southwark, the records of the streets, and reports of commissioners, were properly admitted.    They were pertinent to the issue, duly authenticated, and, in fact, were the very elements of the case.    The court being of opinion that there is no such covenant as that declared upon, either express or implied in the deed, it might be unnecessary to consider the residue· of the case.    But, even upon the concession of a covenant, it would seem that the defendants are discharged. The act alleged to be a disturbance or breach, is the act of the legislature, the sovereign power in the state—to whose acts, when within the pale of the constitution, all persons owe obedience, as the law of the land.    It is the act of the plaintiff as well as of the defendant; and · hence results the propriety of the legislature, when vesting authority in municipal authorities, the exercise of which may affect private rights, always inserting a clause that the corporation or municipality shall compensate private injury suffered for the public good.    I do not undertake to say, that there was private injury suffered in this case; on the contrary, I think not, as there was no such covenant as he alleges; but cases have occurred, where the advantage resulting from improvements was no compensation for the private injury suffered.

Judgment affirmed.