## IN THE OPENING OF MAGNOLIA AVENUE.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued April 1, 1887—Decided October 3, 1887.

1. The act of May 14, 1874, P. L. 164, relating to the assessment of damages, etc., is inapplicable to streets already located and established by due process of law.
2. When viewers are appointed to report on the necessity for opening a street already laid down on a confirmed plan, their report is to be confined to that subject, and they are without power to assess damages under said act.
3. In re Jackson street, 83 Pa. 328, followed; In re Twenty-eighth street, 102 Pa. 140, and In re Pearl street, 111 Pa. 565, distinguished.

Before MERCUR, C. J., TRUNKEY, STERRETT, GREEN and CLARK, JJ.; GORDON and PAXSON, JJ., absent.

No. 172 January Term 1887, Sup. Ct.

To the Court of Quarter Sessions of Philadelphia county, on December 23, 1885, a board of viewers appointed to view Magnolia avenue, in the Twenty-second ward of Philadelphia city, and to determine whether or not said street be required for public use, made a report which after matters introductory was as follows:

## Statement of Facts.

The viewers, from the evidence produced, find that Magnolia avenue is a street duly located upon the public plan, called Plan No. 17, and was confirmed as a public highway September 15, 1879, as of the width of fifty feet and of such width extends from above Centre street to and beyond Chelton avenue. From Centre street to the railroad, Magnolia avenue has been partially graded, so that the railroad embankment is about ten feet high, and thus crosses the lines of said avenue, completely obstructing its use as a public highway and preventing safe and convenient passage; while between the railroad and Chelton avenue the breast and waters of Kelly's dam occupy the full width of Magnolia avenue for a distance of about two hundred and twenty-five feet eastwardly from said embankment. Yet very many people are daily compelled to use Magnolia avenue for the purpose of passing from Centre street to Chelton avenue, to the church of St. Vincent de Paul, and to the markets and other places of resort; because there is no crossing other than this between Hancock street, a long distance below, and Chew street, a greater distance above said Magnolia avenue. There also appears to have been a dedication of the property within the lines of Magnolia avenue, by George Jagger and others, on March 26, 1853, which dedication is recognized in the deed under which Joseph Scatchard's sons claim, Jagger having granted and conveyed to Scatchard in 1865 by deed in which Wilson street (the former name of Magnolia avenue), is named as a landmark. Moreover, the firm of Joseph Scatchard's Sons have themselves admitted the dedication in erecting buildings to conform to the lines of the street, and also conceded the right of way by making and maintaining a bridge for people to cross the waters at the breast of Kelly's dam to the pathways over the railroad embankment. This right of way has existed for more than twenty-one years, during which period it has been in constant daily use by large numbers of people. George Scatchard (one of the firm), testified that people had been crossing by their mill and over the railroad since they bought their land, in 1865, while it was otherwise shown that the way had been in general use long before that date.

The proofs produced before the viewers fully sustain the petition and are entirely unanswered. A number of witnesses

were examined, among them John H. Dye, registrar of the survey department, who produced the deeds of dedication, and H. A. Stallman, the surveyor and regulator of the district, both of whom testified that the grade of Magnolia avenue, as established, provided that the street should—when opened—pass beneath the railroad, and Mr. Dye said that Magnolia avenue was formerly called Wilson street, and undoubtedly is the street mentioned in the deeds of dedication.

Therefore having viewed and also carefully considered the petition and proof submitted to them, the viewers in this matter have concluded, after due deliberation, and do find that Magnolia avenue, from Centre street to Chelton avenue, is needed for public use and should be presently opened effectively for that purpose. . . . . .

To this report a number of exceptions were filed by George Scatchard and others, and by the city of Philadelphia, two of which, raising the question determined in this court, were, that the viewers " have not set forth in their report the great cost which the proposed opening will entail upon the city and the damage which will ensue to the exceptants, although the evidence as to the same was before them," and " declined to take up the question of damages and assess the same."

The court, ALLISON, P. J., filed the following opinion:

There are a number of exceptions to the report of the jury, the most material of which presents again for reconsideration by this court the question, whether the jury were justified in refusing to comply with the demand of the representatives of the city, that after reporting in favor of the opening of the street they should proceed to assess damages resulting from such opening, under the supposed requirements of the act of the 14th of May, 1874, P. L. 164.

It is claimed, on behalf of the petitioners, that the street was placed on the plan of the borough of Germantown, as far back as the year 1850, and was confirmed by the Court of Quarter Sessions in 1863, and recognized as a confirmed street of the city of Philadelphia, by the board of surveyors in 1879, when they established the grades of the street according to the lines by which it appeared on the plan.   Before the jury there appears to have been an effort made to establish a dedication

Opinion of Court below.

of the land within the lines of the street, which, it is now proposed, shall be taken and appropriated to public use. The testimony of Mr. Dye, registrar of the survey department, as reported to us in the argument, is, that a Mr. Jagger and others, who owned the land in 1853, dedicated the same to the public as a highway, and that it has since been known as a dedicated street.

The jury or viewers state, in their report, that they were appointed to view and determine whether or not Magnolia avenue, from Centre street to Chelton avenue, in the Twenty-second ward, is now needed to be opened for public use.

The present proceeding seems to ignore the question of dedication, for if the land within the lines of the street has in fact been dedicated to the public, and was so recognized by the city, Magnolia avenue, between the designated points, is not only an established highway, but the public have the right at any time to enter upon and use it for the purposes of travel. In such case there are no damages to be paid, for after dedication of a street by one who is the owner of the land, especially when such dedication has been recognized by actual use and accepted by the public authorities, the question would seem rather to be, Shall the city at this time be required to put the street in a condition that will render travel over it safe and convenient? If the street is a dedicated and accepted street, the right of the public to enter upon and enjoy its use would seem to be beyond question. But it does not seem to us that this question properly arises now, under the petition to open Magnolia avenue as a located street. The fact to be ascertained first is, Does the public convenience require that it shall be thrown open to common use at this time? Putting aside, therefore, the question of dedication, which may possibly come up hereafter, we take up the case on the main point raised by the exceptions: Were the jury right in reporting alone on the question, whether Magnolia avenue shall now be opened for public use, or were they bound to go further and endeavor to obtain releases of claims for damages from the owners of the land to be taken, and if such releases could not be obtained, then to assess damages?

This question was first presented for consideration and decision In re Fifty-second Street, reported in 11 Phila. 437,

about two years only after the passage of the act of 1874, under which act this contention arises. After a most careful examination of the act of 1874, the construction placed on it was, that it was wholly inapplicable to the case of a street already located and established by due process of law; that when a street was marked out or laid down on a confirmed plan it was to be regarded as established or located; that it was the power to locate a road or bridge that authorized the jury to perform the subsequent duty of assessing damages, and that when they were appointed to report on the necessity for opening an established or located road or street, they could only report on that question and were without power to assess damages; that when a highway was laid down or marked out on a confirmed plan, and thus located on the land, there was no further act of location to be performed; that which was already done could not be done over again. We thought then, and think now, after the most careful examination of the whole subject, that in the case of a road already located the jury have nothing to do, except to follow the direction of the law applicable to such a case, and report on the necessity of opening. That is what the jury have done in this case, and we think they have conformed strictly to their duty, and that they would have departed from it if they had gone further and reported an assessment of damages. That a jury have specific duties to perform, when appointed as a jury of view merely upon the question of opening a located street or road, ought now be regarded as a settled question.

The decision in the Opening of Twenty-eighth street, 102 Pa. 140, was made upon an application on behalf of the city to set aside the appointment of a jury appointed to report on the necessity of opening Twenty-eighth street, which was stated in the petition to be "according to the old city plan;" that is, as the same had been located or laid down on said plan. The city had strenuously denied the right to appoint a jury to advise the court upon the question of opening a plotted or confirmed street. Judge Thayer in discharging the rule vindicated his judgment, in an opinion showing a most thorough and comprehensive examination and understanding of the subject which he discussed. The decision sustaining the appointment of the jury was confirmed, on appeal, by the Supreme Court.

In the case just referred to, the question now under consideration was not raised, but it was not made a contention on the part of the city, that if the jury of view could be appointed, that their duty was to do other than to report on the necessity of opening the street. In the statement of the facts of the case we are informed " that the jury of view filed a report, wherein they found and determined that the opening of Twenty-eighth street is a public necessity." Only this and nothing more. This report was not questioned on the ground that the jury did not go on and obtain releases of claims or assessed damages. The thought does not seem to have been entertained by any one that the jury had not performed their entire duty when they reported on the expediency of opening the street. The court confirmed this report, which certainly does not carry with it the implication that they thought the jury had not done all that, under the law, they were authorized to do.

The question, what a jury can or cannot do, in a case like the one now before the court, was expressly raised and decided In re opening of Jackson street, 83 Pa. 328. There has been a persistent effort to get rid of the effect of this decision by entirely disregarding it, or by placing on the decision a different interpretation from that which was evidently intended by the court.

Jackson street was a street on the confirmed plan of the city. A jury of view reported that there was a public necessity for the laying out and opening of the street, using the term laying out as synonymous with laying open to common or public use. It could not mean plotting or laying out a street by lines or boundaries, because that had already been done on the plan of the city. After so reporting, they proceeded as stated in a second or supplemental report, in accordance with the act of 1874 as they understood it, in discharge of the duties required by said act, to endeavor to procure releases from all claims for damages which might arise by the opening of the street, and failing to secure such releases, they took up the question of an assessment of damages, and reported that no damages would be sustained by any of the parties over whose ground the street was located. This, it will be seen, was a direct attempt to apply the act of 1874 to an already plotted or located street.

Opinion of Court below.

To this action, on the part of the jury, an exception was filed, which alleged that the provisions of the act of May 14, 1874, were not applicable to this case, and were improperly followed by the petitioners and the jury.

In the opinion of the Supreme Court, reversing the court below, which had dismissed the exception and confirmed the report, discussing the precise question now before us, it holds the following language: "What, then, has been the effect of the act of 1874 on the general highway system in the city of Philadelphia? It has manifestly established a uniform method throughout the commonwealth for adjusting damages at the time when and by the viewers by whom a road or bridge shall be located. But it has done nothing more. It made no provision for streets already located, and streets laid on the city plan have been treated as so located throughout the statutes. . . . . . It was for an original view only that the act was intended to provide. Damages were not to be adjusted or assessed, unless the viewers should decide in favor of locating the street or bridge. And this location, as was said by the judge who decided the case of Fifty-second street, was the primary duty imposed by the law of 1874."

Could anything be more plain than this clear and unambiguous language of the Supreme Court, in deciding the precise question now under consideration, which decision stands up to this time unshaken by any subsequent decision of the court of last resort? In the opinion of court No. 2, in the matter of the opening of Pearl street, the authority of Jackson street is sought to be set aside by the statement that the decision of the Supreme Court In re Twenty-eighth street overrules Jackson street, which is therefore no longer to be regarded as a controlling authority upon this question. An examination of In re Twenty-eighth street will show that no such point was before the court below, nor was it raised in the Supreme Court. The contention on the part of the city was, that the Court of Quarter Sessions had no power to appoint a jury to report on the necessity for opening Twenty-eighth street, on the ground that the jurisdiction of the municipal legislature was exclusive, under the act of the 21st of April, 1855, a point that had been expressly ruled the other way by the affirmance by the Supreme Court of Large v. The City, 3 Phila. 382, and also

in Jackson street. The question of the power of a jury, appointed to report on the necessity for opening a street previously located, to assess damages for such opening, in no way, directly or collaterally, came up in that case. And yet it is claimed that it overruled the decision in Jackson street, which decided that the act of 1874 did not apply to located streets. Nor was the denial of power in a jury of view appointed to open a street, to go on and assess damages, at all complicated by the question of the retroactive operation of the act of 1874, in the consideration of either Fifty-second street or in Jackson street, as the court in deciding Pearl street seemed to think. The point was raised by counsel representing the city in both cases. In the former case, in the last paragraph of the opinion, after denying the power of the jury to assess damages because the act of 1874 was inapplicable, the remark is added: For this reason the questions discussed on the argument of the exceptions do not arise, and are therefore dismissed from further consideration. In Jackson street, the concluding language of the Supreme Court is: "As the proceeding was wholly unauthorized, it is unnecessary to enter into the question of the retroactive operation of the law, or into an examination of the alleged defects of the record." The opinion in Pearl street seems to rest very largely on the expediency of applying what are called sound business principles to the action of a jury inquiring as to the expediency or necessity for opening a street. This, it seems to us, is a question for the legislature, and not for the courts, unless the application of such a rule of action is found in the law as it now exists. The primary duty to locate a street, which must of necessity be an original or new street, is put aside as an unimportant consideration, with the remark: If, as in the case of a plotted street, the location is already fixed, they are relieved from the consideration of that part of a jury's general duty; they are free to proceed at once to the rest. And this is said, notwithstanding the ruling in Jackson street, that the act of 1874 made no provision for streets already located, and that it was intended for the case of an original view only—that is, where no street had been previously located or established. We are wholly unable to agree with the reasoning or the conclusion of the court In re Pearl street, and as Pearl street con-

flicts with the previous decision of the Quarter Sessions, and with that of the Supreme Court also, as we read it, we cannot accept the decision in that case as an authority which should influence, much less control, our judgment. We therefore dismiss the exception under which this question has been presented.

We have carefully considered the remaining exceptions, no one of which do we think is well taken. All of the exceptions are therefore dismissed and the report of the jury is confirmed.

This writ was thereupon taken by the exceptants, and it was assigned for error, inter alia, that the court erred in confirming the report when the viewers had refused to consider and assess the damages to the land-owners and to report to the court the great cost of opening the street.

*Mr. William H. Addicks, Assistant City Solicitor,* and *Mr. George Junkin* for the exceptants, plaintiffs in error:

This record raises a question of great importance, which was decided against the position now assumed by the court below in Pearl street, 15 W. N. 205, affirmed in this court in 111 Pa. 565. The rule laid down in Pearl street, in support of the act of 1874, has been followed in all the proceedings in the Court of Quarter Sessions of Philadelphia until in this case.

The act of June 13, 1836, with its special provisions in § 76, and the repealing clause of § 81, obliterated all local acts relating to the city and county of Philadelphia and codified the law up to that time; giving a special system founded upon the general road law of the commonwealth, but modified by the 76th and following sections. But these special provisions of the act of 1836 were all swept away by the act of March 16, 1866, P. L. 224. The act of 1874, consolidating juries of view and assessment, is now a part of the general road law in force in every county of the state.

1. The title of the act of 1874, which is a part of the act and clearly indicates its intent, is, "An Act relating to the assessment of damages from the opening of roads and highways:" Penn. R. Co. v. Riblex, 66 Pa. 169. The juries mentioned in the act have other duties besides locating, which

can be performed whether the streets or highways be plotted or not; they must decide whether there is need for the proposed street or highway, and, if so, obtain releases or assess damages and report: Twenty-eighth St., 102 Pa. 140.

2. "Laying out," "opening," "location," in the road laws, each and all have the same legislative significance, viz: an appropriation to public use, giving the owner an immediate right to an assessment of damages: Beale v. Railroad Co., 86 Pa. 509; Wadhams v. Railroad Co., 42 Pa. 310; Heise v. Railroad Co., 62 Pa. 67. On the other hand, the plotting and survey of a city plan of streets, gives no right to damages and may be changed in the discretion of the municipality: Plan of Pittsburgh, 2 W. & S. 320; Forbes St., 70 Pa. 125; Furman St., 17 Wend. 649; Sedgeley Ave., 88 Pa. 514.

3. When Twenty-eighth St., 102 Pa. 140, was before this court it was argued that the general road law was not applicable to the opening of plotted streets, because the juries contemplated by the act were juries to "lay out" roads, and their duties under the act were principally surveying duties—the opening being a matter for order of court—and as streets could only be laid out or plotted by the board of surveys, the jurisdiction of the Quarter Sessions had been supplanted. This argument was held to be unsound. It was decided that juries to "lay out" were juries "to open," and that, whether the streets were plotted or not. The logic of Twenty-eighth street applies with equal force to the enactments now under consideration. The road law is in force in this county, even where, as in the case of plotted streets, some of the surveying duties of the viewers have been transferred from the juries and courts to the department of surveys.

If it be said that this is inconsistent with Jackson street, 83 Pa. 328, the answer is: (1), Jackson street decided that the Court of Quarter Sessions had only jurisdiction for the opening of roads in the unplotted parts of the county; that councils had jurisdiction for the opening of streets that had been plotted by its authority; that the act of 1836, the general road law, was not applicable to plotted streets, and that the act of 1874 had not divested the councils of the exclusive jurisdiction over plotted streets; (2), it expressly left undecided the effect

of the act of 1874 upon the act of 1836 and cognate statutes, where such were in force.

It is asked that the decree of the court below be reversed, and the record remitted for further proceedings by the viewers either by way of release or assessment of damages, to the end that the public expense, due to the opening of streets, may be ascertained before a final order of taking may be made.

*Mr. Theo. Cuyler Patterson* for the petitioners, appellees.

1. Does the act of 1874 apply to a street duly located upon the public plan? The question was squarely decided in the negative by this court in Jackson street, 83 Pa. 328. The case cited has not been overruled by Pearl street, 111 Pa. 565, where the decision related entirely to a question of dedication; the court declining to hear the city solicitors upon the suggestion of jurisdiction, holding that they had no standing in the case : See Statement of Facts, 111 Pa. 571.

2. If the act be applicable at all, then it is applicable in its entirety; and under it viewers have power, not only to find if the street be needed, but also to locate; that is, to define the courses and route between the termini, and so to alter the direction of a street and to change it from that already approved by the surveyors. This would beget endless confusion and work a repeal of the act of June 6, 1871, P. L. 1353, whereby the board of surveyors is clothed with absolute power " to locate " streets, a power which, as this court decided in Plan 166, 93 Pa. 221, is exclusive and from the exercise of which there is no appeal.

OPINION, MR. JUSTICE GREEN:

We certainly did decide in the case In re Jackson street, 83 Pa. 328, that the act of 1874 does not apply to cases in which streets in Philadelphia have been already located. That was the one leading and, indeed, only question in the case. It was fairly stated and fully and elaborately considered by our late brother WOODWARD, who gave ample and satisfactory reasons for his conclusion. That decision has never been either directly or indirectly overruled or indeed questioned by this court, in any case to which we have been referred or of which we have knowledge. The question involved was not before

this court, either in the case of Twenty-eighth street, 102 Pa. 140, or Pearl street, 111 Pa. 565. We did not assume the consideration or the decision of the question in those cases, and hence have given no cause for an inference that we intended even to qualify, much less to overrule, the case of Jackson street. Nor have we any disposition to do so. We are satisfied it was correctly decided. The learned judge of the court below has written so clear, forcible and exhaustive an opinion upon the merits of the contention in the present case, that we find it impossible to add anything to it. We affirm the order of confirmation for the reasons stated in that opinion. We have examined and considered the several assignments of error other than those which raise the question of jurisdiction and find them to be without merit.

The order of confirmation is affirmed.