# IN RE OPENING OF BROOKLYN STREET.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF PHILA-
DELPHIA COUNTY.

Argued January 11, 1888—Decided February 20, 1888.

The act of May 14, 1874, P. L. 164, relating to the assessment of damages, etc., is inapplicable to streets already located and established according to law; and when viewers are appointed to report on the necessity for opening a street appearing upon a confirmed plan, their report is to be confined to that subject and they are without power to assess damages under said act: Magnolia Avenue, 117 Pa. 56, followed.

2. When a street has been laid out by municipal action and remains un-
opened upon the confirmed plan, a description in a deed subsequently
made referring to the street as a boundary, does not create such a dedi-
cation to public use of the land within the street lines as to deprive the
grantor of his right to compensation when his land is afterwards ac-
tually taken by the opening of the street.

3. Bellinger v. Union Burial-ground Society, 10 Pa. 135; Forbes Street,
70 Pa. 125; Easton Borough v. Rinek, 116 Pa. 1, explained; Pearl
Street, 111 Pa. 565, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 41 July Term 1887, Sup. Ct.; court below, No.
December Term 1883, Q. S.

On October 26, 1883, upon the petition of John H. Goldbeck
and R. A. Wilkinson representing that Brooklyn street, from
Myrtle street to Hutton street, was upon the confirmed plans
of the city of Philadelphia, that the state of the improve-
ments in the neighborhood was such as to require the opening
of said street, and praying for the appointment of a jury of
view, jurors were duly appointed, who on February 14, 1884,
filed a report showing due proof of service of notices, meet-
ings and continuances, and that, "after due consideration of
the subject and hearing the evidence submitted, the under-
signed find and so report that Brooklyn street, from Myrtle
street to Hutton street, ought now to be opened, and that
public necessity requires that the same should be done."

On March 24, 1884, the city of Philadelphia filed the fol-
lowing exceptions:

1, 2. Because the jury erred in reporting that the public
necessity required the opening of said street between the
points named, and in not reporting that the public necessity
did not require such opening.

3. Because the jury erred in not performing the duties im-
posed upon them by virtue of an act entitled "A supplement
to an act relating to roads, highways and bridges, relative to
the appointment of road reviewers in the city of Philadel-
phia," approved March 16, 1866, P. L. 224, and a further act
entitled "An act relating to the assessment of damages aris-
ing from the opening of roads and highways, and the con-
struction of bridges," approved May 14, 1874, P. L. 164; that

is, the jury should have informed the court not only of the opinion and judgment of the viewers upon the question of the propriety of, or occasion for, the opening of the street, but also the cost incident to such opening arising from damages to private property, and upon whom the payment of such damages should be imposed, without subjecting the county to the expense of a second jury to assess the damages separately, in order that the court might have such information as would prevent danger to the public treasury from a report in favor of the opening of the street which provides no information of the cost that may follow such opening.[1]

4. Because the jury decided in favor of opening said road, it became their duty to procure from the persons over whose land such road was located releases from all claims from damages that might arise from the opening of said road; or, failing to procure such releases, if it appeared to them that any damage would be sustained, it became their duty to assess the same in accordance with the provisions of the law for the assessment of damages in the county of Philadelphia, and make report thereof, and return the same together with all releases obtained to the Court of Quarter Sessions, as required by the act of May 14, 1874.[2]

5. Because the report of the jury does not contain such statement of facts as will justify the court in exercising its discretion to confirm or reject the opinion of the viewers upon the merits of the proceeding.[3]

On November 22, 1884, the court, MITCHELL, J., sustained the third, fourth and fifth of the foregoing exceptions, and ordered that the report filed be set aside and the petition be referred back to the same jury with instructions to proceed in accordance with the provisions of the said act of May 14, 1874.[4]

After several continuances, on November 18, 1885, the jurors filed a second report finding that said street ought to be opened and that, inter alia, the property of R. A. Wilkinson, 50 feet front on Parrish or Myrtle street, was damaged to the amount of $3,333.33 and benefited by an increased valuation and the additional frontage on Brooklyn street to the amount of $483.33, the difference between which sums was $2,850, which

amount was awarded to him as damages. As a part of their report the jury set out that there had been offered in evidence, to show a dedication of Brooklyn street along the property of R. A. Wilkinson, the following deeds: R. A. Wilkinson to Washington Miller, dated July 18, 1882, for premises "110 feet front on Myrtle by 70 feet deep on Brooklyn street;" recorded: Deed, Washington Miller to George E. Goldbeck, dated July 19, 1882, for lot northeast corner Myrtle and Brooklyn, 14 feet on Myrtle and 20 feet on Brooklyn, being part of a larger lot conveyed by R. A. Wilkinson by deed July 18, 1882, to Washington Miller; recorded: Deed, John H. Goldbeck et al., to Wm. D. Kelley, dated June 4, 1877, for small lot bounded on Brooklyn street, recorded. The report left to the court as matter of law the question whether or not the recitals in said deeds amounted to a dedication of the bed of Brooklyn street; if the court should so find and should strike out the award of damages, $3,333.33, then the benefits to be assessed against said Wilkinson were found to be $483.33.

On December 24, 1885, the city of Philadelphia filed, inter alia, the following exceptions to this second report:

2. Because the jury awarded to R. A. Wilkinson the sum of $2,850.

6. Because the jury did not find that so much of the land of R. A. Wilkinson, between Myrtle and Hutton streets, as is occupied by Brooklyn street, was dedicated to the city of Philadelphia for public use, by the descriptions in the deeds in evidence as set forth in said report.[5]

Subsequently, the court, MITCHELL, J., made the following decree:

And now, May 1, 1886, it is ordered, adjudged and decreed that the sixth and seventh exceptions of the city of Philadelphia to the report of the jury are hereby sustained, and so much of said report as awards to Robert A. Wilkinson the sum of $2,850 . . . . . is hereby set aside, the court being of the opinion that upon the facts appearing in the title set out in this record, the said Brooklyn street having been placed upon the public plan prior to the conveyances, that the land for which the said damages were awarded is dedicated to public use and that the said Robert A. Wilkinson . . . . . are not entitled to claim damages for the opening of the said Brooklyn

street: And it is further ordered, adjudged and decreed that the said report be and is hereby referred back to the viewers with instructions to so modify their report that the total assessment of benefits shall not exceed the total award of damages, after deducting the award to Robert A. Wilkinson of $2,850 . . . . . in conformity with this decree.[6]

In accordance with said order the jury, on June 2, 1886, filed a third report, which recommended the opening of said street and assessed upon the property of R. A. Wilkinson the sum of $166.67, as benefits, and on February 19, 1887, a decree was made confirming all the proceedings and ordering that Brooklyn street be opened to public use in conformity with law.[7]

R. A. Wilkinson then took this writ assigning that the court erred:

1–3. In sustaining the third, fourth, fifth exceptions to first report.[1 to 3]

4. In making the decree of November 22, 1884.[4]

5. In sustaining the sixth exception to the second report.[5]

6. In making the decree of May 1, 1886.[6]

7. In making the final decree of February 19, 1887.[7]

*Mr. Edwin O. Michener*, for the plaintiff in error:

1. The first four assignments of error are disposed of by the decisions of this court in Magnolia Avenue, 117 Pa. 56; New Street, 20 W. N. 198.

2. Is the mention, by name in a deed, of a street which is upon the city plan but unopened, a dedication to the public use of the grantor's title to the soil of the street? An analysis of all the cases in Pennsylvania will disclose that all the instances of dedication by deed arising from the mention of a street as a boundary line, were cases where the street was laid out and plotted by the property owner and not by the city authorities: Schenley v. Commonwealth, 36 Pa. 62; Darlington v. Commonwealth, 41 Pa. 63; Baker v. Chester Gas Co., 73 Pa. 116; Trutt v. Spotts, 87 Pa. 339; Schenley v. Pittsburgh, 104 Pa. 472; Transue v. Sell, 105 Pa. 604; Pearl Street, 111 Pa. 565.

3. The cases in Pennsylvania which decide that the mention of a street laid out by the city on its public plan is not a dedi-

cation of the land of the street, are few but they are positive and emphatic: Bellinger v. Union Burial Society, 10 Pa. 137; Forbes Street, 70 Pa. 125; Lehigh Street, 81* Pa. 85; Easton Borough v. Rinek, 116 Pa. 1. In Hoole v. Attorney General, 22 Ala. 190, it was held that the mention of a street in a deed was simply a matter of geographical description, and not a dedication of the soil of the street to public use. And so, Bower v. Manufacturing Co., 4 Cush. 332.

*Mr. Charles F. Warwick, City Solicitor*, and *Mr. William H. Addicks, Assistant City Solicitor*, for the defendant in error:

The rule of law that when a man sells land describing it as bounded by the side of a street, he is held, whether the plot be public or private, to covenant so far as he is concerned that the street is a public street, so that, when the deed has once been recorded, all others may act upon the faith of his dedication, has become a rule of property, and a reversal would unsettle the title to many miles of highways in the city of Philadelphia.

1. But it is well settled, that when lots are sold and conveyed according to a plan which shows them to be on a public street, this creates an implied covenant of the existence of a public street and operates as a dedication to public use: Story Street, 11 Phila. 456; Transue v. Sell, 105 Pa. 604; Berks Street, 15 Phila. 381; Pearl Street, 111 Pa. 565; Schenley v. Commonwealth, 36 Pa. 62; Schenley v. Pittsburgh, 104 Pa. 472; Trutt v. Spotts, 87 Pa. 341; Birmingham Borough v. Anderson, 48 Pa. 253.

2. The fact that the land remained unused as a highway and fenced off from the public, will not defeat the right of either the owners or the city to its use as a street without payment of damages: Kopf v. Utter, 101 Pa. 27; Philadelphia v. Friday, 1 Brewst. 320; Pearl Street, 111 Pa. 565.

3. It is true, that the first four assignments of error are disposed of by Magnolia Avenue, 117 Pa. 56, and New Street, 20 W. N. 198; but as the court below entered its decree in favor of the opening of the street upon the faith of the report as to damages and benefits, it should be allowed to exercise its discretion in the light of the rulings in those cases, without considering the question of damages and benefits, and the incidental question of dedication. It might be that the court

below would decline to confirm the report of the viewers, if the necessity was purely local and private and the public expense uncertain.

OPINION, MR. JUSTICE GREEN:

The first four assignments of error are disposed of by the decision of this court in the case of Magnolia Avenue, 117 Pa. 56, and they are therefore sustained.

The question raised by the remaining assignments is one of dedication. Does one who, in making a deed of his land, refers as a boundary to a street laid out but not opened, thereby dedicate so much of his land as lies within the street limits to the public, and thus deprive himself of a right to compensation when his land is actually taken?

If the question were one between a grantor and grantee, and involved a right of way over the street upon which the land conveyed bordered, of course the grantor must make good his covenant that there was a street corresponding with the one described in the deed. But that is the law, not upon the theory of a dedication to public use, but upon the implied contract between the parties. As between them, every consideration requires that if the ground conveyed is described as bordering upon a street, the street should be there in compliance with the description. If it be a public street laid out by municipal authority, the grantee is presumed to know that fact, and takes his title subject to the municipal control as to the time and circumstances of opening it for use. If it be a street laid out by the grantor himself over land which he sells in lots, there is necessarily an implied covenant that he will open it at least for the use of his grantees. But when a municipal government lays out streets upon the land of a private citizen, it is not the act of the owner in any sense, and hence there is no necessity for an implication of a covenant against the owner to give his land to the public without compensation, nor even to dedicate it to public use. Why, then, shall these implications be made in a case where the street is laid out by municipal action and the owner does nothing whatever as to the public, and nothing as to his private grantee except simply to refer, as matter of description in his grant, to a street laid out, but not opened, by public authority. In making such

a grant the public is not in privity with him; his dealing is not with them but with a private citizen. Whatever may be his obligation to that citizen because of the private contract between them, no analogy requires a similar deduction to be made between the owner and the public. Of course an owner may dedicate his ground to public use as streets by dividing his land into lots and streets upon a plan made for the purpose and selling the lots in accordance therewith. But in such case the acts done are his own acts, and because they are his they justify the inference of dedication.

There are but few reported cases in which the direct question has arisen. The case of Bellinger v. The Union Burial-ground Society, 10 Pa. 135, is one of the earliest. Its purport is thus expressed in the syllabus: A sale of a lot by a plan on which a public street is laid out as one of the boundaries, and a conveyance describing the lot as a lot on W street, as the same shall be opened, and bounded on the south by W street, does not create a covenant on which the grantors are liable where the street was subsequently vacated by legislative authority and the grantors entered upon and occupied the land over which it was laid out. COULTER, J., in discussing the legal effect of the descriptive words of the grant, said: " But did the words used in the deed amount to a covenant or can a covenant be squeezed out of them? Every lot granted must have a boundary to fix its locality, and what boundary so fit and proper as a street laid out, marked, and declared a public highway according to law? It was not then actually open, but to be opened when public convenience required. This both parties knew, for it was the law, and all people are supposed to know the law on the subject about which they contract. . . . . . It would be a novel legal doctrine to broach over the broad lands of the state, that if one sold land bounded by a public highway, he might be sued for a covenant broken, if the public in any time to come should vacate the highway. The parties described the subject of the contract under an existing state of things as known and accessible to everybody. But this does not amount to a covenant that this state of things shall be perpetual." The value of this decision consists in the distinction it makes between the effect of words of description in a private grant, where the adjoining street is laid out by public authority and when by the act of the owner.

In the case of Forbes Street, 70 Pa. 125, commissioners were appointed, under an act of 1836, to set off and survey a tract adjoining Pittsburgh as a city district, make a plan of it, locate and mark streets, etc., and return the plan to the Quarter Sessions, which being approved, the streets to be public highways. The district was surveyed, the plan made and returned, and the streets, Forbes street being one, were located. After the plan, Aiken sold a lot describing it as bounded on Forbes street. This was not a dedication by him of his land covered by Forbes street. This court, READ, J., having said that the act made two classes of streets, one, such as were laid out by the commissioners, and the other, such as had been laid out and appropriated by private persons for public use, or for the use of owners of lots fronting thereon, concluded: " So the question of dedication in all the authorities in this state really applies only to streets of the second class, and has no application to streets of the first class, which in one of the cases creates the absurdity of dedicating by inference a house, as well as the ground on which it stands, to the public."

The case of Borough of Easton v. Rinek, 19 W. N. 561, seems to be quite in point with the present. On the opening of Eighth street in the borough of Easton, the heirs of Jacob Rinek applied for an assessment of damages by reason of opening the street and taking their land covered by the street. The case is not well reported, but an examination of the paper books shows that on the trial, after proof of the value of the land taken, the borough offered to prove that Jacob Rinek, the deceased ancestor, had sold lots bordering on Eighth street, the description of one of them being as follows : " beginning at the southeast corner of Ferry and Eighth streets, as laid out in the new plan of said town; thence east sixty feet, etc., . .   . . to said Eighth street; then north along the east line of said Eighth street," etc., etc.   The records of the deeds thus made, and also of the public maps of the borough, showing that Eighth street was a public street of the borough prior to said deeds, were offered to prove a dedication of the ground occupied by the street to public use, but they were rejected by the court below, and this was the error assigned here. In a Per Curiam opinion we said : " No question arises between the vendor and vendee of land fronting on a street.   The

sole claim is by the owner of the land against the municipality for damages which he sustained by its taking of his land for a street. No damages were sustained until the street was opened." The judgment of the court below was affirmed. [Now reported, 116 Pa. 1:—Rep.]

The only case which seems to be in hostility with the foregoing, is In re Opening of Pearl Street, 111 Pa. 565, but an examination of that case as it appears in the report and in the paper books, discloses that it is entirely different from the present and that it does not raise the question arising upon this record. It was not an application for damages by the original owner upon the opening of the street, but of certain grantees of the original owners and of others who claimed under them. The Baring estate owned the land, and in 1858 the then owners, two English ladies, executed a formal act of dedication to public use of a large number of streets extending through the whole of a tract of thirty acres, together with a release of damages to the city for the opening of the streets. Accompanying this written and sealed dedication was a plan of the whole property, with the streets all laid out upon it, and all named, except Pearl street, which had not then been named, but which was nevertheless marked and laid out as a thirty feet street on the plan. This plan was expressly referred to in the act of dedication and made a part of it, and the fact of dedication was just as complete and perfect as to it, as it was in regard to all the other numbered and named streets on the plan. Moreover, in the deed to Richard Smithurst from the Baring trustees, this street is expressly mentioned as a street included in the grant, and of course it could only be regarded as an already dedicated street, for which no damages could ever be claimed by anybody. The same description appeared in the deed to Steen, and it was his trustees who claimed damages in the case of Pearl street. There were other claimants, but none of them could have any greater rights than the Barings, Smithurst, or Steen, all of whom preceded them in the title and were alike excluded from damages by the written dedication. The paper books show that counsel against the claimants argued the case upon this very ground. Viewed in the light of these facts the language of this court in the Per Curiam opinion in the case of Pearl street was entirely appo-

site and appropriate, but it decides nothing as to the present contention, which did not then arise. It is not necessary to review the other authorities cited for the appellees. They are not in point and we are clearly of opinion that upon the exact facts of the present case the doctrine of dedication by implication does not apply as against the claim of the appellants. The assignments of error are all sustained.

> Decree reversed, and record remitted for further proceedings at the cost of the defendants in error.