JUANA SUÁREZ VIUDA DE ARROYO, demandante y apelante, *v.*
MANUEL SAAVEDRA SOLER, demandado y apelado.

Núm. 7005.—*Sometido:* Abril 21, 1937. *Resuelto:* Febrero 14, 1938.

*J. Veray, Jr., Juan B. Soto, Juan F. Soto y E. Igaravídez,* abogados
de la apelante; *García Méndez & García Méndez,* abogados del
apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del
tribunal.

Un empleado del demandado, que estaba a cargo de un
autocamión cargado de caña de azúcar, lanzó un pedazo de
caña a un grupo de escolares, algunos de los cuales sustraían
o habían sustraído cañas del autocamión. Uno de los niños,
que tenía catorce años de edad, fué golpeado y murió a con-
secuencia de las lesiones recibidas. El juez de distrito
declaró con lugar una moción de *nonsuit* y sin lugar la acción
de daños y perjuicios.

 La corte inferior cita 12 Manresa 595 y 596, y *Stone* v. *Hills* (Conn.), 29 Am. Rep. 636, citado con aprobación en *Marrero* v. *López,* 15 D.P.R. 767. También distingue los casos de *Garretzen* v. *Duenckel* (Mo.), 50 Mo. 104, 11 A.R. 405; *Bittle* v. *Camden & Atlantic R. Co.* (N. J.), 55 N.J.L. 615; 23 L.R.A. 283; *Ploof* v. *Putman,* 26 L.R.A. (N.S.) 251 y *Soderlund* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 13 L.R.A. 1193.

La autoridad para hacerse cargo de un autocamión cargado de cañas "incluye autoridad para tomar las medidas razonables que sean adecuadas al objeto transportado, a fin de protegerlo contra destrucción o pérdida." Restatement of the Law of Agency, Vol. 1, sección 69, pág. 165. En el mismo tomo hallamos lo siguiente:

"Cuando un empleado trabaja cerca, aunque no dentro, del sitio autorizado, o cuando el acto realizado es similar al autorizado, todos los hechos deben ser considerados para determinar la responsabilidad que corresponde a su conducta, tanto en lo atinente a la cuestión de si su conducta se asemeja suficientemente a la autorizada para que haga al patrono responsable, como a la cuestión de si en ausencia de prueba específica de los móviles del empleado éste tuvo el propósito de actuar dentro de los límites de su empleo." (Pág. 506.)

Que:

"Para estar dentro de los límites del empleo, la conducta debe ser de la misma naturaleza general que la autorizada, o incidental a la conducta autorizada." (Sección 229, pág. 507.)

Que a este respecto una de las cuestiones a considerarse es:

"El punto hasta el cual ha habido una desviación de la manera ordinaria de lograr el resultado autorizado." (Sección 229, pág. 507.)

Que otra cuestión a ser considerada a este respecto es "si el acto es o no seriamente criminal." Que "el patrono es responsable de los actos autorizados mas no intencionales." (Sección 229.) Que:

"La cuestión última a determinar es si resulta justo que la pérdida motivada por los actos del empleado deba ser considerada como uno de los riesgos normales que debe sufragar el negocio en que trabaja el empleado." (Sección 229.)

Que para que un acto sea incidental a uno autorizado "debe estar subordinado o ser pertinente a aquél para cuya realización se contrató al empleado. Debe estar dentro del objetivo último del patrono y ser un acto que no sea improbable que el empleado realice." (Pág. 510.)

Que:

"El hecho de que determinado patrono no tenga motivo para esperar que el empleado en cuestión realice el acto no es concluyente." (Pág. 510.)

Que:

"Aunque un acto sea el medio de lograr un resultado autorizado, el mismo puede ser efectuado de manera tan desaforada o caprichosa que no caiga dentro de las atribuciones del empleo." (Pág. 510.)

Que:

"Un acto puede estar dentro de las atribuciones del cargo aunque sea conscientemente criminal o torticero." (Sección 231, pág. 516.)

Que:

"El hecho de que el empleado intente cometer un delito, especialmente si éste es de alguna magnitud, debe ser considerado al determinarse si el acto cae o no dentro de las atribuciones de su empleo, toda vez que el patrono no es responsable de los actos que son claramente inadecuados, o no se pudieran prever, para la realización del resultado autorizado." (Sección 231.)

Que:

"Un jardinero que usa una varita para agredir a un niño transgresor con el propósito de echarle de la finca puede estar actuando dentro de los límites de su empleo; pero, sin embargo, que si el jardinero dispara un arma de fuego contra el niño con tal fin, sería muy difícil resolver que tal actuación estuvo dentro de las atribuciones de su empleo." (Sección 231.)

Que:

"Al igual que sucede en otros casos, ello es cuestión del grado de culpabilidad, siendo el punto a determinar si la conducta del empleado es tan distinta a la autorizada que equivalga sustancialmente a una cosa diferente." (Sección 231.)

Que:

"El hecho de que se realice un acto de manera desaforada o anormal tiene peso para indicar que el empleado no actuó animado de la intención de cumplir con los deberes de su cargo." (Pág. 528.)

Que a fin de "crear responsabilidad por la agresión de un empleado contra tercero, el cargo debe ser uno que posiblemente haga que el empleado tenga conflicto con otros." (Sección 245, pág. 547.)

Que:

"La responsabilidad de un patrono por el uso de fuerza por parte de su empleado no queda obviada por el hecho de que el empleado actúa en parte movido por razones personales, como por ejemplo, la venganza." (Pág. 550.)

Que:

"El hecho de que el empleado actúe de manera desaforada o inflija castigo desproporcionado a las necesidades del negocio de su patrono, es evidencia que indica que el empleado se ha desviado de las atribuciones de su empleo al realizar el acto." (Pág. 550.)

En la página 551, sección 245, hallamos los siguientes ejemplos:

"A es empleado por P como conductor de un camión de repartir hielo. Mientras A reparte el producto unos cuantos chicuelos le molestan tratando de obtener pedacitos de hielo. A lanza un trozo de hielo contra uno de ellos a fin de poder adelantar en su trabajo. El hecho de que el empleado trate de causar daño al niño y vengarse de ese modo de las molestias recibidas, no impide que el acto caiga dentro de las atribuciones de su empleo."

"P emplea a A como guardaagujas. A es molestado continuamente por los muchachos, quienes invaden sus alrededores y lo obstaculizan en su labor. En un arrebato de cólera dispara contra un niño de cuatro años que le molestaba. Debido a la edad del niño, el

acto de *A* es tan insólito que no cae dentro de las atribuciones de su empleo y *P* no es responsable de tal actuación bajo la regla sentada en esta sección.''

En *Doscher* v. *Superior Fire Proof Door & Sash Co., Inc.* (N. Y.), 221 App. Div. 63, el chófer de un vehículo de motor, al tratar de amedrentar a unos niños que se subían al vehículo, les lanzó una barra de hierro y les produjo daño. Se resolvió que actuaba dentro de las atribuciones de su empleo. En *Zerngis* v. *H. P. Hood & Sons Co.*, 152 N. E. 50, la Corte Suprema de Massachusetts dijo:

''El demandante, mocetón de catorce años, fué herido en la cabeza por un trozo de hielo lanzádole por un tal Gillespie, empleado de la demandada. Un carro, cargado de hielo o de hielo y leche, perteneciente a la demandada, estaba detenido junto al negocio como a cincuenta pies de distancia de la Avenida Massachusetts, en Cambridge. La demandada tenía por costumbre poner un camión de hielo en este lugar durante las noches de verano y todas las noches los muchachos merodeaban por allí con el objeto de obtener pedazos de hielo. En la noche en cuestión había en los alrededores unos treinta y seis muchachos. El grupo . . . que obstaculizaba al empleado de la Hood Company estaba junto al camión. Gillespie, quien se admitió era uno de los empleados de la demandada, brincó o salió del camión, se bajó, recogió un pedazo de hielo del tamaño de medio ladrillo y lo lanzó contra el demandante, que estaba entonces a una distancia como de cien pies o más, hiriéndolo. No hubo prueba de que el demandante fuera uno de los muchachos que recogían pedazos de hielo junto al carro. Al admitirse que Gillespie era uno de los empleados de la demandada y al ofrecerse prueba de que estaba en el camión propiedad de ésta, que un gran número de chicuelos estaban junto al carro y recogían el hielo de la demandada, y que el grupo de mozalbetes molestaba al empleado de la demandada, el jurado pudo haber llegado a la conclusión de que Gillespie trataba de alejar a los muchachos y que hacía esto en el curso de la labor que estaba llamado a rendir en favor de su patrono. El patrono es responsable de tal actuación, ora el daño se ocasione por negligencia o con el fin desaforado o avieso de realizar de manera ilegal los quehaceres impuéstosle por el patrono. *Howe* v. *Newmarch*, 12 Allen 49, 57; *Levi* v. *Brooks*, 121 Mass. 501; *Coughlin* v. *Rosen*, 220 Mass.

220, 223, 107 N. E. 914. El caso cae dentro del principio sentado en *Robinson* v. *Doe,* 224 Mass. 319, 320, 112 N. E. 1007, y en *Coughlin* v. *Rosen,* supra.''

El caso de autos en sus méritos—es decir, si es que debemos aquilatar la prueba aducida en pro y en contra de la teoría de que el empleado actuaba dentro de las atribuciones de su empleo—es uno dudoso (*border case*). Desde el punto de vista del demandado podría argüirse que el empleado lanzó el trozo de caña con intención criminal directamente al niño que fué agredido y que su conducta es tan desaforada que exonera al patrono de toda responsabilidad. Por otra parte, nos parece una inferencia más razonable, a juzgar por toda la prueba, que el empleado lanzó el trozo de caña al grupo de niños con el fin—no exento de cólera, de malicia o de un deseo de venganza—de impedir que algunos de ellos continuaran su pillaje. En esta hipótesis, el hecho de que actuara con malicia, lleno de cólera o por cualquier otro motivo reprensible que no llegaba a una intención deliberada de matar, no relevaría, como hemos visto, al patrono de toda responsabilidad. El juez de distrito, al resolver la moción de *nonsuit,* sin embargo, no fué llamado a apreciar la prueba con el mismo grado de cuidado que tendría que ejercer al decidir el caso en sus méritos.

En *Rosado* v. *Ponce Ry. & Light Co.,* 18 D.P.R. 609, 634, este tribunal dijo:

'' . . . El declarar con lugar una moción de sobreseimiento es equivalente a dictar sentencia fundada en una excepción previa, siendo esto en realidad una excepción previa a la prueba. Las mociones de sobreseimiento deben ser consideradas con cautela y concederse únicamente en aquellos casos que son completamente claros. Pero no existe nada en los autos por donde veamos que toda la prueba presentada por el demandante no fuera considerada por la corte como cierta, aunque pudiera ser el hecho que indudablemente es, de que distintas deducciones se hicieron de la misma, de aquéllas que hizo el abogado del demandante. No incumbía a la corte dar a la prueba presentada por la demandante la mayor fuerza probatoria posible, sino que debe considerarse imparcialmente para

ambas partes, como en todos los casos se hace y en cualquier estado de los procedimientos.''

En *Tous Soto* v. *Chevremont,* 31 D.P.R. 381, seguimos la doctrina del caso de Rosado.

En *González* v. *González,* 30 D.P.R. 823, 825, dijimos:

'' . . . Si bien la prueba no era muy robusta fué suficiente para los fines de una moción de *nonsuit.* En una moción de *nonsuit* la corte no aquilata la prueba sino que resuelve si existe alguna prueba que sostenga la demanda.''

En *Feliú* v. *Independence Indemnity Co.,* 43 D.P.R. 227, 228, la regla fué sentada nuevamente así:

''Nadie duda en este caso, de conformidad con la decisión en el de *Calcerrada* v. *Am. R. R. Co.,* 35 D.P.R. 873, que no incumbe a la corte aquilatar la evidencia, sino que por regla general ésta debe meramente decidir si existe suficiente prueba para sostener la demanda. Algunas decisiones dudan que una corte, al presentársele tal moción, no pueda ignorar cierta prueba trivial o no creída por ella, pero esta cuestión no está envuelta en el presente recurso.''

En las cortes insulares no existe el juicio por jurado en casos civiles. Un juez de distrito, al resolver una moción de *nonsuit,* no está impedido de hacer las inferencias que de la prueba sean razonables y propias. *Rosado* v. *Ponce Ry. & Light Co.,* supra. Sin embargo, al hacer tales inferencias debe tener presente que, según se indicó en el caso de Rosado, ''las mociones de sobreseimiento deben ser consideradas con cautela y concederse únicamente en aquellos casos que son completamente claros.'' Desde luego, tampoco debe estar en un error en lo que respecta a la ley aplicable a los hechos que tiene ante sí. Si en el presente caso fuera claro que no existiera ningún error de hecho o de derecho y que el resultado hubiese sido el mismo de haberse declarado sin lugar la moción de *nonsuit,* no habría motivo alguno para la revocación de la sentencia.

La teoría de la moción del demandado fué que el principal es sólo responsable de los actos negligentes o descuidados de

su agente, pero nunca de un acto criminal de tal agente. Esa no es la ley.

El juez de distrito no adoptó definitivamente la teoría de la ley sustentada por el demandado. Su razonamiento estaba principalmente en armonía con la verdadera doctrina (*test*). No obstante, su conclusión y el resultado pudieron haber sido distintos a no ser por la influencia que sobre él ejerció la teoría del demandado. El declarar sin lugar la moción de *nonsuit*, desde luego, no excluye que la corte de distrito considere luego la prueba a la luz del curso indicado por los casos más recientes, conforme demuestran los extractos anteriores.

*La sentencia de la corte de distrito debe ser revocada. Debe declararse sin lugar la moción de nonsuit y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Señor Wolf disintió.[*]

El Juez Asociado Señor Córdova Dávila no intervino.