# In re Opening of Twenty-eighth Street.

1. The jurisdiction of the court of Quarter Sessions cannot be taken away by implication.

2. The Act of April 21st 1855, which provided : " That whenever councils (of the city of Philadelphia) shall deem the public exigency to demand it, they may order by ordinance any street laid down upon any of the public plans of the city to be opened, giving three months' notice thereof to the owners," did not take away the jurisdiction of the court of Quarter Sessions, by the aid of a jury of view, to open streets laid down on a city plan.

3. Said Act, in the cases to which it applies, merely took away the exclusive jurisdiction formerly vested in the court of Quarter Sessions, and conferred concurrent jurisdiction on the city councils.

4. The Board of Surveyors, created by said Act, is clothed with final authority, under the direction of councils, to plot and lay out streets

[In re Twenty-eighth Street.]

upon the plans of said city, but the power of said board does not extend to the opening of streets.

January 15th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK J., absent.

CERTIORARI to the Court of Quarter Sessions of *Philadelphia county :* Of July Term 1882, No. 29.

The record showed the following proceedings :—

Petition for the appointment of a jury of view, to view and report upon the necessity of opening Twenty-eighth street from Reed street to the north line of what was Passyunk road, according to the old city plans. A jury of view was appointed in pursuance of the prayer of the petition.

The city solicitor, on behalf of the city, obtained a rule to show cause why the appointment of the jury should not be set aside, the petition be dismissed, and the proceedings be quashed, on the ground of want of jurisdiction in the court of Quarter Sessions.

The court, after argument, discharged this rule, THAYER, P. J., filing an opinion which is printed below.

The jury of view filed a report, wherein they " unanimously found and determined that the opening of Twenty-eighth street, from Reed street to Passyunk road, is a public necessity."

The city thereupon filed the following exceptions to said report :—

1. Because the court of Quarter Sessions is without jurisdiction in the premises.

2. Because the jurisdiction of the municipal legislature is exclusive, there being no special or local Acts governing or providing a system for this locality, and the general road law of the state being inapplicable thereto.

3. Because there is no power in the Quarter Sessions to determine of what width the said street shall be opened (which is required by the general road law), that power being vested exclusively in the councils, and the board of surveyors of the city of Philadelphia, without appeal.

4. Because the jury erred in reporting that the public exigency required the opening of Twenty-eighth street, between the points named herein.

The court, after argument, entered an order dismissing said exceptions, and confirming the report of the jury of view ; whereupon the city took this writ of certiorari, assigning for error the action of the court in discharging the said rule, and the order dismissing the said exceptions, and confirming the report of the jury of view.

The opinion of THAYER, P. J., discharging the rule was as follows :—

[In re Twenty-eighth Street.]

The reason assigned for setting aside the proceedings which have been commenced and are still pending in this case is, that Twenty-eighth street, between Reed street and Passyunk road (which is the part sought to be opened), is a street laid down upon the city plans, which have been duly confirmed; that the general road laws, which provide for the appointment of juries of view and the opening of streets by the court of Quarter Sessions, are not applicable to the opening of a street laid down upon the city plans, and as it is alleged that there is no local law applicable to the case, it is argued that the court is without jurisdiction.

From a very early period in the history of this State, that part of the business of government which relates to the laying out and opening of roads and streets has been committed to the courts of Quarter Sessions. The first Act upon the subject which appears in the printed statutes seems to be the Act of 1700, which empowered the justices in each county to lay out and confirm all roads, &c.: Laws of Pennsylvania (Carey & Bioren's Ed.), p. 18; Bradford's Laws of Pa. p. 15. This Act, like all the later general road laws, provided for a jury of view to assist the court of Quarter Sessions in its determinations. Many subsequent Acts continued the same jurisdiction in the courts of Quarter Sessions, and with the same instrumentalities and forms. Such Acts were passed February 20th 1736, February 17th 1762, March 4th 1763, May 18th 1765, September 29th 1770, March 21st 1772. All these Acts were superseded and repealed by the well-known Act of April 6th 1802 (3 Laws of Pennsylvania, 512), which enacted that the justices of the court of Quarter Sessions of each county within the Commonwealth, on being petitioned to grant a view for a public road, should have power to appoint a jury of view, consisting of six freeholders. Their report was made subject to approval or disapproval by the court. If approved, a record was made of it, and the road ordered to be opened. A subsequent section provided for a jury of six to assess the damages of persons who were injured. By an Act passed March 25th 1805 (4 Laws of Penna. 232), entitled " An Act for the better regulation of the city of Philadelphia and districts adjoining," the court of Quarter Sessions of the county of Philadelphia, on being petitioned to grant a view " for opening any street, lane or alley within the city of Philadelphia," was authorized and required to appoint such jury of view, their report being made, as in all the Acts, subject to the approval of the court of Quarter Sessions. By a supplement to the general road law of 1802, passed April 3d 1809 (5 Laws of Penna. 53), it was enacted that the several courts of Quarter Sessions of the peace in their respective counties should upon application to them being

[In re Twenty-eighth Street.]

made " for the purpose of opening a new road, proceed there-
in by views and reviews, in like manner as has been practiced
in laying out public roads or highways under the laws now in
force."  It then proceeds to confer upon the viewers appointed
to open a new road the power at the same time to vacate an
old one, and to report their proceedings to the court.  Some
parts of the Act of 1802 were altered by subsequent legislation,
but in general its provisions remained in force as the road law
of the state until the law reported by the revisers was enacted
in 1836.

Many local laws applicable to the various municipal districts
adjacent to the old city of Philadelphia were passed from time
to time.  By an Act passed April 3d 1804, the court of Quar-
ter Sessions was required to appoint juries of view "for opening
any public road, street, lane or alley within the township of the
Northern Liberties and District of Southwark:"  4 Laws
Penna. 198.  The fifth section of an Act passed March 26th
1808 (4 Laws Penna. 521), regulating the opening of streets
laid out by commissioners in a designated portion of the town-
ship of Moyamensing, provided for a petition to the court of
Quarter Sessions, and the appointment of a jury of view, to re-
port whether it be proper " to open such street or road," and
the proceedings are to be " in the same manner as other streets
or roads are by law to be opened."  In the case of Spafford
Street, 4 S. & R. 106, it was held that this Act did not inter-
fere with the general road law of April 6th 1802, and that un-
der that law new streets might be opened which were not laid
out by the commissioners.  By an Act passed March 22d 1813,
incorporating the district of Spring Garden, section 18, provis-
ion is made for the " opening of streets from time to time, as
the increasing improvement of the district may require," by
petition to the court of Quarter Sessions, which is authorized
to act without the aid of a jury of view (6 Laws of Penna. 43).
By an Act passed April 2d 1822 (7 Laws Penna. 605), the
court of Quarter Sessions is authorized, upon petition, " to de-
termine whether it is proper to open any street, lane, alley or
road" laid out in the district of Southwark by commissioners,
pursuant to an Act passed September 29th 1787, section 18 of
the Act of May 3d 1832 (P. L. 428), authorized the court of
Quarter Sessions to appoint juries of view to report upon the
opening of streets in Penn township and in unincorporated
Northern Liberties, and to order them to be opened if the state
of improvement in the neighborhood required it.  The 6th sec-
tion of the Act of April 19th 1843 (P. L. 345), applied to
another part of Penn township the provisions of the Spring
Garden Act, empowering the court of Quarter Sessions to open
streets without the instrumentality of a jury of view. The Act

to incorporate the Kensington district of the Northern Liberties, passed March 6th 1820, empowered the court of Quarter Sessions, upon petition, to order the opening of streets in that district (7 Laws of Penna. 265). By the Act of April 4th 1837 (P. L. 303), the opening of streets in the borough of West Philadelphia and the township of Blockley and Kingsessing was made dependent upon the same authority, and they were to be opened only " by due course of law." 

The 4th section of an Act passed January 24th 1832 (P. L. 29), authorized the court of Quarter Sessions to appoint a jury of view to report upon the opening of streets laid out in the township of Passyunk by commissioners appointed by the same Act.

That portion of Twenty-eighth street which is the subject of the present proceeding lies in what was, at the time of the passage of this Act, the township of Passyunk. Whether Twenty-eighth street appears upon the plan of those commissioners I am not informed, nor do I think it material, as the purpose is plainly apparent to apply to the opening of streets in Passyunk the same methods of procedure in the Quarter Sessions which was provided by the general road laws of the state, which laws are, in my judgment, sufficient to control the present question.

The general road law of 1836 is, in all its essential features, the same as that of 1802. It applies, as has been several times determined by the Supreme Court, to streets in boroughs and cities as well as to country roads. Both Acts empower the courts of Quarter Sessions of every county in the state to " grant a view for a road," and enact that if the report of the jury of view is favorable, and the court approve it, "the road so approved shall be opened."

It is supposed by some, and that view seems to have been taken at one time by Judge OSWALD THOMPSON, In re Sixth street (1 Phila. Rep. 277), that because the 76th section of the Act of 1836 (P. L. 566), which contains some special directions relating to the filing of the petition and the selection of the viewers in the county of Philadelphia, speaks only of " laying out or widening" streets, there can be no jury of view for opening a street already laid out by authorized commissioners or boards of survey. In re Sixth Street the point ruled was that, inasmuch as the case was governed by a local Act, the viewers should have been appointed in accordance with that Act, and not selected in accordance with the provisions of the Act of 1836. For that reason the report was set aside. The Act of 1836 expressly saved all local Acts.

But I cannot agree with the position assumed in the opinion in that case, nor with the decision In re Hare Street, 34 Leg.

Intell. 408, that no authority exists in the court of Quarter Sessions, under the general road law of the Commonwealth, to appoint a jury of view upon a petition to open a street already laid down upon a city plan. Much stress was laid in those opinions, upon the fact that the 76th section of the Act of 1836, uses only the words "laying out or widening streets." By the 1st section the court is to appoint a jury, when petitioned, to grant "a view for the road." That the phraseology was altered in the 76th section is doubtless due to the fact that the 76th secwas drawn by a different hand. It was not in the bill reported by the revisers, but was added in the legislature. It is unreasonable to suppose that the legislature intended by the language used to prevent the appointment of a jury of view in the case of a petition to open a street in Philadelphia already laid out on a plan, when the statute book is filled with acts authorizing exactly that mode of procedure for opening streets already laid out. Besides, in Smedley v. Erwin, 1 Smith 445, it was expressly determined by the Supreme Court that all the provisions of the Act of 1836 are as applicable to Philadelphia as to any other county, except so far as they are therein declared to be inapplicable, and that the only particulars in which they are declared to be inapplicable are those relating to the time of presenting petitions and the method of selecting the jurors for views. "In all other respects," says Judge STRONG, "there is no difference. No other difference was intended." It is impossible therefore to draw any inference against the power of the court of Quarter Sessions to proceed to open streets upon the city plan from the language of the 76th section. It must be plain that if the courts of Quarter Sessions throughout the state have that power the court of Quarter Sessions of Philadelphia county has the same power, and that they have that power is plainly deducible from the Act of 1836, and from all the general road laws of the state which have been enacted from time to time. It is a power which has been exercised by the Quarter Sessions of this county from the earliest period of provincial history to the present time. Judge THOMPSON himself must have changed, in subsequent years, the views expressed in his opinion In re Sixth street, because the records of the court of Quarter Sessions of this county contain indubitable evidence that he appointed many road juries and ordered many streets upon the public plans of the city to be opened in the years succeeding the delivery of the opinion In re Sixth street. The records of the court also show that the other judges have uniformly pursued the same practice. Judge ALLISON, now the President Judge of Common Pleas, No. 1, made many such orders. Judge LUDLOW, now the President Judge of Common Pleas, No. 3, did the same. The judges of the Quarter Sessions who sit in

[In re Twenty-eighth Street.]

Common Pleas, No. 2, decided the same point In re Opening of Elm street, in which, after argument, they overruled and dismissed an exception based upon the alleged lack of power in the Quarter Sessions to appoint a jury of view to open a street laid down upon the city plan.

This much is certain, that if the Quarter Sessions cannot proceed by the aid and instrumentality of a jury of view to open a street already laid out on a city plan, it cannot, under the general road law, open such a street at all, for there is no warrant in that law for proceeding in any other manner.  It would further follow, as a necessary and unavoidable conclusion, that, inasmuch as the Act of 21st of April 1855, authorizes councils to open streets only in case of "public exigency," being intended only for special cases requiring immediate action (as was amply shown by the learned Judge who delivered the opinions In re Parrish street and Large *v.* The City), no power exists anywhere in ordinary cases to open streets laid down by the city plans, and the plans themselves are useless rubbish for lack of legal authority to give them practical effect.  A construction which brings the legislation of the state upon so important a subject into such a dilemma is not to be followed unless it be absolutely necessary and unavoidable.

Any one who will read the road laws attentively may see that the words "laying out" and "opening" are constantly used as equivalent expressions.  Sometimes one phrase is used, sometimes the other.  Both are often used indifferently in the same statute.  The supplement to the general road law of 1802, passed April 3rd 1809, already referred to, expressly enacted that "for the purpose of opening a new road," the courts of Quarter Sessions, in their respective counties, should "proceed therein in like manner as has been practiced in laying out public roads or highways under the laws now in force."  If there is anything specially potential in the word "opening" here, we have it used in a sense and in a statute broad enough to comprehend all cases of opening, whether of highways and streets long laid out or newly laid out, whether laid out by a jury of view or by a board of surveyors.  And it is to be remembered that the Act of 1836 repealed prior Acts only "so far as they are inconsistent with the Act of 1836."

Again, the Act of March 25th 1805, already cited, relating to the city of Philadelphia, gave the Quarter Sessions power "to grant a view for opening any street, lane or alley in the city of Philadelphia," and by the Act of consolidation all Acts relating to the city not inconsistent with that Act remain in force.  Does the city of Philadelphia cease to be the city of Philadelphia because its boundaries are enlarged?  Does not

[In re Twenty-eighth Street.]

the power given to the court of Quarter Sessions extend to the city of the future as well as to the city of 1805?

But all doubts upon the subject now under discussion would seem to be set at rest by the Act of March 16th 1866, P. L. 224, which enacts that "hereafter, in all cases relating to the opening of streets upon the plans of the city of Philadelphia, the persons appointed to view shall be appointed by the court of Quarter Sessions of the county of Philadelphia." Here is a very clear and unmistakable legislative construction of the previous Acts. The primary object of the Act was to cut up that provision of the 76th section of the Act of 1836 which required a venire to issue for road jurors in Philadelphia, and to assimilate the proceedings in such cases with the provisions of the general road law of the state. If the words do not, as they may reasonably be construed to do, contain in themselves an explicit grant of authority to the court of Quarter Sessions of Philadelphia to appoint juries of view in cases relating to the opening of streets laid down on the city plan, they at any rate embody a very distinct expression of the construction put by the legislature upon the previous laws, and such construction is always entitled to weight, because, as was said in Kirk v. Dean, 2 Binney 359, "it shows the general understanding of the country."

It remains only to notice briefly some of the cases which were referred to upon the argument. In the case of Parrish street, 35 Leg. Int. 438, 6 W. N. 215, it was decided that the Act of March 22nd, 1813, relating to the opening of streets upon the public plan of the district of Spring Garden, has not been expressly or impliedly repealed, and that the proceedings in the court of Quarter Sessions for the opening of streets in that district may be in accordance with the provisions of the local Act. It was also decided that the jurisdiction given to councils to open streets in cases of "public exigency" by the Act of April 21st 1855, is concurrent with that of the Quarter Sessions and not exclusive, a point which Judge ALLISON had previously demonstrated in Large v. The City, 3 Phila. Rep. 382, and which he fortified and re-affirmed in Parrish street, pointing out the inaccuracy of the syllabus of In re Jackson street, 2 Nor. 328, and the absence of any warrant in that case for holding the contrary doctrine. But In re Parrish street cannot be cited in support of the position that the Court of Quarter Sessions has not authority to appoint a jury of view for the opening of streets laid down upon the city plan. On the contrary, the learned judge who decided that case, in touching upon the question, which was considered, but not decided, because it was not necessary, intimates a very strong doubt of the correctness of that proposition, citing the uninterrupted

[In re Twenty-eighth Street.]

practice of the court from 1790 to the present time, and the language of the Act of 1866, and expressly avoids committing himself to the doctrine announced in the case of In re Hare street: All that was decided In re Fifty-second street, Legal Intelligencer, 1876, p. 72, was that the Act of May 14th 1874, relative to the locating of streets, was not applicable to a street already located and laid down by competent authority upon the city plan, which was the point decided also In re Jackson street. In re Milford street, 4 Barr 303, the proceedings were quashed because the general road law provides for the laying out and opening of one road only at a time, and it was attempted by the petitioners in that case to lay out and open by one proceeding " many parallel roads, and many more cross ones, surrounding entire squares, and having many endings and beginnings," to make, in fact, "a dislocated fabric of the plan of an incorporated borough."

My researches have not enabled me to find any case which decides that under the general road laws the Quarter Sessions of Philadelphia county have not jurisdiction to appoint a jury of view upon a petition for the opening of a street laid down upon the city plan, except the decision In re Hare street. I am compelled reluctantly to dissent from that decision. I cannot agree to it because it is, in my judgment, opposed not only to the true intent and meaning of the road laws, but to their express words and directions, as well as to the settled practice of the court for more than a century.          Rule discharged.

*W. H. Addicks* and *Chas. E. Morgan, Jr.*, assistant city solicitors ( *Wm. Nelson West*, city solicitor, with them), for the plaintiff in error, argued that the effect of the Acts of April 21, 1855, and June 6, 1871, was to transfer the powers formerly vested by the general road laws in the court of Quarter Sessions and the jury of view, to the board of surveyors of the city of Philadelphia, and the city councils ; the board now having exclusive authority to plot and lay out streets upon the plans ; and councils having the exclusive power to direct the streets so laid out to be opened to public use in all portions of the city not subject to local road laws. There being no such local laws in force in the district in question, a jury of view appointed under the Act of 1836 cannot view and open a plotted street on the city plans, and, as the Quarter Sessions cannot act without a jury of view, if the jurisdiction to open Twenty-eighth street is not vested in the councils, it exists nowhere. They cited : In re Plan 166, 12 Norris 221 ; In re Sixth street, 1 Phila. 277 ; In re Hare street, 34 Leg. Int. 408 ; In re Parrish street, Leg. Int. 1878, 438 ; In re Jackson street, 2 Norris 328 ; In re Thirty-ninth street, 10 W. N. C. 384.

[In re Twenty-eighth Street.]

*Theodore Cuyler Patterson* and *E. K. Nichols* (*H. K.* and *D. M. Fox* with them) contra, relied on the opinion of the court below, and cited: Large *v.* The City, 3 Phila. 382; In re Parrish street, Leg. Int. 1878, 438; In re Fifty-second street, Leg. Int. 1876, 72; Smedley *v.* Erwin, 1 P. F. S. 449; In re Paschall street, 31 P. F. S. 122; In re Sedgley avenue, 7 W. N. C. 1.

Mr. Justice TRUNKEY delivered the opinion of the court, April 16th 1883.

No question arises whether any local statute relative to opening streets, enacted prior to the Act consolidating the city of Philadelphia, is still in force, for it is conceded in the assignments of error that there is no special or local Act providing for the opening of streets in the district where the street described in the petition is located. The sole inquiry has reference to the jurisdiction of the court.

In the argument for the plaintiff in error it was said that "until the passage of the Act of April 21st 1855, the jurisdiction of the court of quarter sessions as to the opening of streets was exclusive." If the jurisdiction has been taken away it must be by an enactment which expressly or impliedly repeals the statute which conferred it. There is no express repeal, and there can be none by implication unless there is strong repugnancy or irreconcilable inconsistency. A grant of concurrent jurisdiction to another tribunal, or to the city councils, takes away the exclusive quality. The board of surveyors, under the direction of the councils, are clothed with final authority to plot and lay out streets upon the plans of the city, and that has supplied most provisions of the Act of 1836 respecting the duties of road viewers, and supersedes the power of the Quarter Sessions to locate or determine the width of such streets. But the power of said board has not been extended to the opening of streets.

The Act of April 21st 1855, provides—"That whenever councils shall deem the public exigency to demand it, they may order by ordinance any street laid down upon any of the public plans of the city to be opened, giving three months' notice thereof to the owner." This vests a large discretion in the councils to act or refrain, but it authorizes action only when they judge respecting a street laid upon the plans that the public exigency demands its opening. Though the councils, without control or review, can determine whether they will act in any particular case, and may claim the right to act in all cases, no intendment appears in the Act of 1855 to deprive the Quarter Sessions of jurisdiction. Jurisdiction is vested in councils in some cases, if not in all; at most it is concurrent. They

may rightly exercise it in cases of public exigency. The judicial and legislative understanding of the question is clearly shown by the learned judge of the court of Quarter Sessions in an opinion which completely vindicates the proceedings and order for opening the street. Besides the pointed recognition of the power of the court in the Act of March 16th 1866, the Act of April 13th 1856, provided, " that councils may in all cases, whether the proceedings to open any street shall have been commenced in councils or in the ordinary course before the court," refuse to appropriate for the opening until contributions by persons benefited. The point is now raised the first time in this court. It was not involved in the cases of Jackson street, 83 Pa. St. 328, and Thirty-ninth street, 10 W. N. C. 384.

For the reasons given by the court of Quarter Sessions,
Order and decree affirmed.

MERCUR, C. J., and GORDON, J., dissented.