## Edward Wetherill v. The Pennsylvania Railroad Company et al., Appellants.

*Road law—Vacation of streets in Philadelphia—Act of June 6, 1871.*

Under the Act of June 6, 1871, P. L. 1353, the department of public works of the city of Philadelphia, formerly the board of surveyors, has authority when properly authorized by councils to vacate a street either opened or unopened; from their confirmation of a new plan omitting the street there is no appeal or review by any judicial tribunal, and nothing further is required for a complete legal vacation. The fact that the department has no power to open a street does not imply that it has no power to vacate it.

Argued Jan. 17, 1900. Appeal, No. 298, Jan. T., 1899, by defendants, from decree of C. P. No. 1, Phila. Co., March T., 1898, No. 1176, on bill in equity. Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Bill in equity for an injunction to restrain defendants from maintaining fences across Wheatsheaf lane.

The facts are stated in the opinion of the Supreme Court.

The court granted the injunction prayed for by the bill.

*Error assigned* was the decree of the court.

*David W. Sellers*, for appellants.—The court should have dismissed the bill, because Wheatsheaf lane had been vacated before its filing: Vacation of William Street, 7 Pa. Dist. Rep. 1; In re Vacation of Melon Street, 1 Pa. Superior Ct. 63.

The court should have referred plaintiff to his remedy at law, because the agreement with the city had been executed: Richard's App., 57 Pa. 105.

*Joseph S. Clark*, with him *Thomas Leaming*, for appellee, cited McGee's App., 114 Pa. 470, In re Pulaski Ave., 5 Pa. Dist. Rep. 1, and In re Vacation of Osage Street, 90 Pa. 114.

OPINION BY MR. JUSTICE MITCHELL, March 19, 1900:

On July 2, 1890, the councils of the city of Philadelphia, passed an ordinance authorizing the department of public works (which succeeded to the powers of the former board of surveyors), to revise parts of the city plans "in such manner as to strike therefrom Wheatsheaf lane, from Coral street to Amber street." For reasons which do not appear, this ordinance was not carried out until 1897, and in the mean time it had been amended so as to restrict the striking off of Wheatsheaf lane to that portion of it between Amber street and the northern line of the right of way of the Pennsylvania Railroad and its leased lines. The object of the whole movement, it may be said in explanation, was to abolish the very dangerous series of grade crossings of Wheatsheaf lane, and the Pennsylvania, the Philadelphia and Trenton, and the connecting railroads at this point. To carry out this object an elaborate agreement was entered into by the city and the railroads concerned, and was ratified by councils by ordinance of February 2, 1897. These later ordinances and the agreement are not however material to the present inquiry, as the authority to strike off Wheatsheaf lane from the city plan rests on the ordinance of 1890, and the later measures merely reduced the portion so struck off.

In June, 1897, the department of public works confirmed a new plan by which Wheatsheaf lane from Amber street to the north line of the connecting railroad's right of way was struck off, and in May, 1898, the defendants erected a fence across the lane at the latter point. Plaintiff then filed his bill to enjoin this fence as an obstruction to his ingress and egress from his property and a public nuisance, on the ground that Wheatsheaf lane had not been legally vacated. We thus have the question whether striking a street off the city plan

by the department of public works in obedience to an ordinance of councils is a legal vacation of the street.

The control of city plans as to streets and of the streets themselves, their number, location, courses and lines, grades, etc., is in its nature a legislative function. But in the early days of the province such control was put very largely in the hands of the court of quarter sessions in accordance with the usage of our English ancestors by which the local affairs of counties and subordinate territorial divisions were largely regulated by the grand jury and the justices of the sessions, without much regard to the lines of distinction between legislative, executive and judicial functions subsequently drawn so clearly and for the first time in history in the constitutions and laws of the American states. An interesting review of the provincial legislation upon the subject of roads and streets is given by Judge THAYER, in his opinion reported In re Twenty-eighth Street, 102 Pa. 140.

But later legislation has tended more to the observance of the accepted lines of distinction in regard to governmental authority, and to vest control of legislative matters where it rightfully belongs in the hands of the legislative branch of municipal government. By the Act of June 6, 1871, P. L. 1353, the board of surveyors (now the department of public works), were " invested with full authority to examine and finally confirm or reject all plans of surveys or revision of plans of the city of Philadelphia when the same have been made by direction of the select and common councils of the said city." By later sections confirmation by the board was made final and without the appeal that had theretofore existed to the quarter sessions, except in the single instance of the addition of a new street to a confirmed plan. See In re Plan 166, 93 Pa. 221.

This act vested the authority in councils. Under their direction the department of public works acts as the executive branch of the municipality to see that the legislative intent is properly carried out. It does not appear that the department has any independent discretion, should it happen to differ with councils on the wisdom or policy of the latter's directions.

The act of 1871 does not in terms refer to the vacation of streets, nor to any other detail such as widening, straightening, changing grade, etc., involved in the subject. But they are all

necessarily implied.  A plan in the sense here used is a plot or survey indicating the number, names and locations of streets, their lines and courses, widths, grades, etc., as they are or are to be laid out and opened on the land, including all particulars germane to the general subject.  The power to make or revise such a plan necessarily includes the power to change, substitute, add to or omit any of the constituent parts of the subject-matter included.  When, therefore, in obedience to the authority and direction of councils, a street is stricken off the city plan by the department, it has no longer any warrant for existence as a public street.  There is no appeal or review by any judicial tribunal and nothing further required for a complete legal vacation.

This view of the act of 1871, was taken by the quarter sessions of Philadelphia in In re Arch St., 10 Phila. 117.  An ordinance authorized the board of surveyors to strike Arch street between 34th and 35th streets from the city plan, and the board did so.  Doubt having arisen, the property holders petitioned for an order of confirmation under the act of 1854, but the late President Judge ALLISON refused it on the express ground that striking the street off the city plan by the board under the act of 1871 was a complete vacation and did not require any action by the court.  The street in that case was unopened, but the act of 1871 makes no distinction in that respect.  The authority of councils extends over all streets, opened or un-opened alike.

The question has not heretofore been expressly decided in this Court, but the views herein set forth are tacitly assumed in McGee's Appeal, 114 Pa. 470, and In re Melon St., 182 Pa. 397.  In both cases the vacation was by direction of councils under agreements with railroad companies for public improvements, and in neither of them was there any subsequent judicial proceeding by way of confirmation, yet through protracted and very strenuous litigation in both cases the completeness and legality of the vacation was assumed without question.

It is strongly urged that as the board of surveyors have no power to open a street, they can have none to vacate it, and their authority under the act of 1871 must be confined to dealing with the plans, citing In re Twenty-Eighth St., 102 Pa. 140.  But there is a very clear and substantial distinction be-

tween the two acts. Merely plotting a street on the city plan does not make it a public street nor involve any present trenching on private rights. But opening a new street involves the exercise of eminent domain in the taking of private property and this can only be done in invitum by judicial proceedings. Without these, therefore, the opening cannot be completed. But vacating a street takes no property from any one. It merely restores to abutting owners their portion of the land freed from the servitude of the public way. There is no constitutional right to damages even on the ground of injury, under the present constitution (McGee's Appeal, 114 Pa. 470; In re Howard St., 142 Pa. 601); and though the legislature has provided for damages in such cases, yet it does not make their liquidation or payment a prerequisite to a legal vacation.

The proceeding in the quarter sessions in 1894 was wholly unnecessary and should have been dismissed on the authority of In re Arch St., supra, in the same court. It cannot influence the present proceeding in any way.

Decree reversed and bill dismissed with costs.