# Bornot v. Bonschur, Appellant.

*Road law—Widening streets—Ordinances.*

Where an owner of property draws back his property line from the established line of the street, the space abandoned comes under the jurisdiction of city councils for all future uses public or otherwise as they may determine; and if the owner in subsequent deeds to different persons refers to this space, but without any covenant in reference to it, and without any reservation to himself or them of any rights therein, and with no grant of any easement of light or air or way different from those of the general public, created by the dedication to public use, the grantees in the deeds, and those claiming under them have no special rights in the space thus dedicated.

If in such a case the city passes an ordinance providing that the street shall be "of the width of sixty feet widening equally on both sides from the center line," and further providing that "after the confirmation and establishment of the said lines it shall not be lawful for any owner or builder to erect any new building or to rebuild or alter the front of any building now erected without making it recede so as to conform to the lines established for a width of sixty feet," the legal consequences are that as to

| 202 | 463 |
| p202 | 474 |
| 202 | 463 |
| e211 | 152 |
| 211 | 154 |

all future alterations the properties within the thirty feet line from the center, will be obliged to recede, and on the other hand those outside of the same line are released from previous restrictions by the consequent vacation of so much of the old street, and the restoration of it to the abutting properties.

When in obedience to the authority and direction of councils a street is stricken off the city plan by the department, it has no longer any warrant for existence as a public street. There is no appeal or review by any judicial tribunal, and nothing further required for a complete legal vacation. The direction of councils, however, is incomplete and not fully effective until the department has acted and put the new lines on the plan.

*Municipalities—Ordinances—Widening streets—City of Philadelphia.*

The councils of the city of Philadelphia passed an ordinance entitled " An ordinance to provide for the widening of Chestnut street on the city plan " which was as follows : " That the department of survey be and is hereby authorized to revise the city plan so as to make Chestnut street from the Delaware river to the Schuylkill river of the width of sixty feet, widening equally on both sides from the old center line. After the confirmation and establishment of the said lines, it shall not be lawful for any owner or builder to erect any new building, or to rebuild or alter the front of any building now erected, without making it recede so as to conform to the lines established for a width of sixty feet." *Held,* that the ordinance indicated a view to uniformity as well as to increased width.

Argued Jan. 14, 1902. Appeal, No. 278, Jan. T., 1901, by defendant, from decree of C. P. No. 2, Phila. Co. March T., 1899, No. 738, on bill in equity in case of Andre F. Bornot and The Philadelphia Trust, Safe Deposit and Insurance Company, Trustee of George W. Conaroe, Deceased, v. Herman E. Bonschur. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for an injunction.

PENNYPACKER, P. J., found the facts to be as follows :

1. Thomas Estlack was on August 25, 1829, the owner in fee of a lot of ground situate in the northeast corner of Sixteenth and Chestnut streets, in the city of Philadelphia, containing in front on Chestnut street ninety feet and extending in depth northward along the east side of Sixteenth street 178 feet. At this time the width of Chestnut street was fifty feet.

2. On that day Estlack conveyed to Jonathan Thomas a lot of ground " situate on the north side of Chestnut street enlarged by a strip of ground six feet in width north and south thrown out by the said Thomas Estlack," which lot was de-

scribed as being at the distance of seventy-two feet eastward from the east side of Schuylkill Seventh street (Sixteenth), containing eighteen feet "in front or breadth on Chestnut street enlarged as aforesaid," and of the depth of 108 feet, "together with the right and privilege to make steps, cellar doors, railings, scrapers and vaults on and under the said six feet of ground in front of the lot of ground hereby granted." This lot subsequently became vested in the defendant Bonschur, and is No. 1533 Chestnut street.

3. On December 1, 1831, Estlack conveyed to Isaac Meyer and George W. Jones a lot on the north side of Chestnut street, "enlarged and widened by a strip of ground six feet in width north and south thrown out by the said Thomas Estlack," at the distance of eighteen feet from the east side of Sixteenth street, containing in front on said Chestnut street thirty-six feet, and in depth northward 108 feet, "together with the right and privilege to make and erect steps and railings, frontispieces, cellar doors, scrapers and vaults on and under the said six feet of ground."

The westernmost moiety of this lot, No. 1539 Chestnut street, subsequently became vested in the complainant, the Philadelphia Trust, Safe Deposit and Insurance Company, trustees under the will of George W. Conarroe, deceased, and in Maria C. Vinton, another of the complainants.

The easternmost moiety of this lot, No. 1537 Chestnut street, became vested in Andre F. Bornot, another of the complainants.

4. On December 1, 1831, Estlack conveyed a lot, the remaining portion of his larger lot, at the distance of fifty-four feet eastward from the east side of Sixteenth street, described as "situate on the north side of Chestnut street enlarged and widened by a strip of ground six feet in width north and south, thrown out by the said Thomas Estlack from the East side of Schuylkill Seventh street at the distance of ninety feet from the eastwardly side thereof, along the north line of said Chestnut street." Containing in front or breadth "on said Chestnut street" eighteen feet, and in depth 108 feet. "Together with the right and privilege to make and erect steps, railings, frontispieces, cellar doors, scrapers and vaults on or under the said six feet of ground."

VOL. CCII—30

This lot, No. 1535 Chestnut street, subsequently also became vested in Bornot, the complainant.

5. About the beginning of the year 1833 a three-story brick dwelling was erected upon each of the said lots, with a front intended to be upon the north line of the strip of ground six feet in width " thrown out " by Thomas Estlack, and these houses so remained until a recent period, when they were converted into stores.

6. The ordinance of the city of Philadelphia of March 21, 1881 (page 51), provided:

" Whereas, a voluntary recession has been made by many of the owners of property on the north side of Chestnut street between Fifteenth and Sixteenth streets, with a view to widening that street, and it being desirable that the said widening shall be legally established," therefore it was ordained " that the department of surveys be and is hereby authorized to place Chestnut street upon the city plan between Fifteenth and Sixteenth streets as widened six feet upon the north side thereof, in such manner that the north line may conform to the line of houses now built," etc.

7. On March 31, 1884 (ordinance, page 54), an ordinance of the city of Philadelphia was approved " To provide for the widening of Chestnut street on the city plan," which ordained:

1. " That the department of surveys be and is hereby authorized to revise the city plan so as to make Chestnut street from the Delaware river to the Schuylkill river of the width of sixty feet, widening equally on both sides from the center line."

2. " After the confirmation and establishment of said lines it shall not be lawful for any owner or builder to erect any new building or to rebuild or alter the front of any building now erected without making it recede so as to conform to the lines established for a width of sixty feet."

8. In November of 1898, Bonschur, the defendant, having removed the old three-story building, No. 1533 Chestnut street, began the erection and construction of a new four-story structure upon the lot, having its front wall at the distance of thirty feet northward from the center of Chestnut street and about one foot south of the north line of the six-foot strip of ground and of the old line of the front of the brick dwelling.

9. On March 24, 1899, counsel for the complainant Bornot,

wrote to the defendant and to his builder, calling their attention to the fact that they were building south of the line called for in the deed to the defendant, and expressing a purpose to file a bill to compel a removal of that portion of the building. At this time the construction had proceeded to the extent that the building was about up to the second story, and the builder testified that " the first story was practically the full height." The bill asking for an injunction was filed April 30, 1899.

10. Previously to November, 1898, the time at which the defendant began the erection of his building, the complainant had removed the houses upon his lots and erected stores Nos. 1535 and 1537 Chestnut street, the front lines of which upon Chestnut street were one and a half to two inches south of the north line of the six-foot strip, but exactly upon the front line of the houses which had stood since 1833 and been accepted by their owners as marking the north line of that strip.

11. The effect of the construction by the defendant is to advance the main wall of his building from ten to ten and a half inches further to the south than those of the complainant, and the undisputed evidence of the only witness produced was that this constituted a substantial injury to the properties of the complainant, lessening their selling value to the extent of $7,500. These properties were left within a recess : to some extent the view of those approaching the stores was cut off ; there was an interference with the opportunity for display in the bulk-windows, and the broken line of the street became an " eyesore." From this testimony it is found as a fact that the injury is special and substantial.

The court entered a decree in favor of the plaintiff.

Exceptions to the adjudication were dismissed by the court, PENNYPACKER, P. J., filing the opinion of the court in which SULZBERGER, J., concurred.   WILTBANK, J., filed a dissenting opinion.

*Error assigned* was in entering a decree enjoining the continuance of the building of the defendant to such extent as the same stood upon the one-foot wide strip formerly part of the north line of Chestnut street, immediately north of said north line as established by the department of survey under the ordinance of 1884.

*Charles C. Lister* and *John G. Johnson*, for appellant.—It was the intention of the ordinance to revise the city plan so far as regarded Chestnut street, by making said street of the uniform width of sixty feet, thirty feet from the old center line, and after this revision of plan so much of the old line of the street as was outside of the revised lines, was necessarily vacated: In re Arch St., 10 Phila. 117; William Street, 7 Pa. Dist. Rep. 1; Wetherill v. Penna. R. R. Co., 195 Pa. 156; Carpenter v. Penna. R. R. Co., 195 Pa. 160; Osterheldt v. Philadelphia, 195 Pa. 362.

*W. Horace Hepburn* and *Rowland Evans*, with them *Richard L. Ashhurst*, for appellees.—An examination of the ordinance of 1884 shows that it was passed for the sole purpose of "widening Chestnut street." Nowhere is it indicated that it was its purpose to repeal the ordinance of 1881. No negative words are used, and it is admitted by all that if it is to be held to be repealed, it must be by implication alone.

In Pennsylvania the settled rule is that a statute can be repealed only by express provisions of a subsequent law, or by necessary implication, and to repeal by implication there must be such a positive repugnancy between the new law and the old that they cannot stand together, or be consistently reconciled, and repeals by implication are not favored: Sifred v. Commonwealth, 104 Pa. 179; Homer v. Commonwealth, 106 Pa. 221; Hendrix's Account, 146 Pa. 285.

It is also a rule of construction that general statutes, without negative words, will not repeal a previous statute, which is particular, even when the provisions of one be different from the other: Seifried v. Commonwealth, 101 Pa. 200; Murdock's Petition, 149 Pa. 341; Bell v. Allegheny Co., 149 Pa. 381.

Councils stand for the legislative branch of the municipality, and the board of surveyors are but an executive branch of the municipal system. To view the system from any other standpoint is illogical and inconsistent with the necessary component parts either of a national, state, or city government: Wetherill v. Penna. Railroad Co., 195 Pa. 158.

The private rights of appellees are distinct from the right of the public.

That a conveyance of a lot bounded by a street or strip of

ground thrown out as part of a street is an implied covenant of the grantor that there is such a street or strip of ground so thrown out, as described in the deed, and that so far as the grantor's title to the solid of the street is concerned, such part of the street as abuts upon the property shall be left open for light and air and access to the abutting property, and that the grantee can insist that the grantor and those claiming under him shall not interfere with the easement, and that this right is distinct and apart from the right of the public to use the street, would seem to be settled by the following authorities and cases: Jones on Easements, sec. 227; Washburn on Easements, p. 129, 138; 2 Sugden on Vendors, p. 596; Trutt v. Spotts, 87 Pa. 339; In re Opening of Pearl St., 111 Pa. 565; Dobson v. Hohenadel, 148 Pa. 367; Parker v. Smith, 17 Mass. 415; O'Neil v. Lathrop, 21 Pickering, 207; Bissell v. New York Central Railroad Co., 26 Barbour, 631; Parker v. Framingham, 8 Metcalf, 260; Spencer's Case, 1 Smith's Leading Cases, p. 220; Franklin Insurance Co. v. Cousens, 127 Mass. 259; Whitney v. Union Railway Co., 11 Gray, 363; Tallmadge v. East River Bank, 26 N. Y. 105; Osterheldt v. Philadelphia, 195 Pa. 355; Patterson v. Harlan, 23 W. N. C. 230.

*James Alcorn* and *John L. Kinsey*, for the city of Philadelphia.

OPINION BY MR. JUSTICE MITCHELL, May 19, 1902:

When Estlack in 1829 drew back his property line six feet from the then established north line of Chestnut street, he dedicated or in his own words "threw out" that space for the public use as a part of Chestnut street and it came under the jurisdiction of councils for all future uses public or otherwise as they might determine. As found by the learned trial judge, there is no covenant in Estlack's deeds to his vendees with respect to this space, no reservation to himself or them of any rights therein, and no grant of any easement of light or air or way different from those of the general public, created by the dedication to public use. The deeds merely refer to Chestnut street " enlarged as aforesaid " as the southern boundary of the lots conveyed. The neighborhood at that time was semirural. When the city of Philadelphia was laid out it was expected

that the settlements would gather first along the two rivers, and the streets were accordingly numbered westward from the Delaware and eastward from the Schuylkill, the latter being distinguished as Schuylkill Front, Schuylkill Second, etc., until they met at Broad. Sixteenth street was known and described in Estlack's deeds as Schuylkill Seventh, and so continued until 1853: Ordinance of November 28, 1853. The main development of the city was westward from the Delaware, with a subordinate and much slower growth eastward from the Schuylkill. Between these two sections was an intermediate region, larger than either, which was but sparsely built upon in 1829. When Stephen Girard made his will in 1830, his direction (afterwards changed by the codicil), was that his college should be built on the square bounded by Chestnut, Market, Eleventh and Twelfth streets, then considered sufficiently remote from the business part of the city to be an appropriate location for a walled and somewhat secluded institution. Estlack's property at Schuylkill Seventh street was, as already said, at least semirural, and each owner built very much as he chose. The six feet additional width thrown into Chestnut street was probably considered as an individual preference or whim of Estlack's not of enough importance to require any special covenant or easement in favor of the purchasers, nor formal action of acceptance or rejection by the city. Whatever the reason, however, it is clear that the deeds gave the purchasers no special rights in this six-feet strip, and the question before us in this case concerns only the city's action in regard to it.

It may be safely assumed from the evidence that the city impliedly accepted the dedication, though no express action concerning it took place until 1881. Chestnut street towards the middle of the nineteenth century, by the accident or caprice of business became the most important street running east and west in the center of the city. The convenience, almost necessity of increased width, has been greatly felt and from time to time has led to efforts to secure it, but the expense has always stood in the way. The most important of these was the Act of April 28, 1870, P. L. 1291, which established the south line of the street at 539 feet south of the south line of Market street. This was a legislative widening of the street five feet, but provided that it should not interfere with any buildings then erected

so that as said in Re Chestnut Street, 118 Pa. 593, it may take 100 years to produce the practical result desired.

On March 21, 1881, the city passed an ordinance reciting that "whereas a voluntary recession has been made by many of the owners of property on the north side of Chestnut street between Fifteenth and Sixteenth streets, with a view to widening that street, and it being desirable that the said widening shall be legally established," therefore, be it ordained "that the department of surveys be and is hereby authorized to place Chestnut street upon the city plan between Fifteenth and Sixteenth streets as widened six feet upon the north side thereof, in such manner that the north line may conform to the line of houses now built, and be thirty-one feet north of the center line of said street," etc. And on March 31, 1884, another ordinance "To provide for the widening of Chestnut street on the city plan," ordained, "that the department of surveys be and is hereby authorized to revise the city plan so as to make Chestnut street from the Delaware river to the Schuylkill river of the width of sixty feet, widening equally on both sides from the center line."

The ordinance of 1881 was a formal recognition by the municipality of the increased width of the street by the six feet strip "thrown out" by Estlack. Whether any other owners had also receded, or to what extent does not appear. Nor does it appear that any steps were taken to enforce recession to the new line by any of the owners who had not already receded voluntarily. In this situation the ordinance of 1884 was passed and its purpose appears to have been to establish a new and uniform line for the north side of the street from the Delaware to the Schuylkill. This as already noted had been done by the act of 1870 for the south side saving pro tempore until alteration or reconstruction all then existing buildings. The ordinance contained the same saving clause, for while the new width was ordered to be put on the city plan, no direction was given to carry out the widening on the ground, but the purpose was limited by the provision of the 2d section that "after the confirmation and establishment of said lines it shall not be lawful for any owner or builder to erect any new building or to rebuild or alter the front of any building now erected without making it recede so as to conform to the lines established for a

width of sixty feet." This was manifestly a compromise, as
the act of 1870 had been, between the desire to secure a greater
width, and the inexpediency of incurring the expense of an im-
mediate compulsory widening. The result was that existing
conditions were not disturbed, but that as taste or necessity
induced changes by owners, progress should be made step by
step towards a street of greater and uniform width.

Consideration is undoubtedly due to the fact that the title
of the ordinance is " to provide for the widening of Chestnut
street," especially in view of the express recognition of the in-
creased width between Fifteenth and Sixteenth streets so re-
cently as in the ordinance of 1881. No doubt the widening
was the main purpose, as it was the main effect. But the form
of the ordinance, as well as the close following of the act of
1870, indicate a view to uniformity as well as to increased width.
The great majority of properties undoubtedly would have to
recede, some more, some less, while some like the Estlack houses
were already back of the new line. If the purpose had been
to save existing lines in such cases, it would have been not only
easy but almost imperative to say so explicitly, but instead of
doing so the ordinance prescribed a uniform width of thirty feet
from the old center line. As was said in the dissenting opin-
ion, " the direction is not that the city plan be revised so far as
it indicates Chestnut street of a width less than sixty feet, but
that it be revised so far as it comprises Chestnut street between
the two rivers." Whether an increased width in some places
only would be advantageous or not is largely dependent on the
circumstances. If a whole square were widened where busi-
ness demanded, it would no doubt be to the general advan-
tage of the property owners as well as the public, but if a few
houses here and there receded while the majority came out to
the line, not only would those houses thus put in an offset or
recess be injuriously affected, but the street in its public as-
pect would have a serrated building line contrary to the gen-
eral city plan. Whether, for example, the city's interests or the
properties themselves would be benefited or injured by a re-
cession of one additional foot by the Estlack houses for a front-
age of ninety feet in a square of four hundred, is a matter of
opinion which councils may have desired to settle by this or-
dinance.

However that may be, the purpose and effect of the ordinance were to establish the legal width of the street at sixty feet. By necessary implication it superseded all previous ordinances on the same subject. The legal consequences followed, that as to all future alterations the properties within the thirty feet line from the center would be obliged to recede, and on the other hand those outside of the same line were released from previous restrictions by the consequent vacation of so much of the old street, and the restoration of it to the abutting properties. " When in obedience to the authority and direction of councils a street is stricken off the city plan by the department, it has no longer any warrant for existence as a public street. There is no appeal or review by any judicial tribunal and nothing further required for a complete legal vacation : " Wetherill v. Penna. R. R. Co., 195 Pa. 156. When, therefore, the ordinance was carried out on the plan by the bureau of surveys, the space between the sixty feet lines became the legal Chestnut street to which all abutting properties were on the one hand bound, and on the other entitled to conform.

The city of Philadelphia has filed a brief, supplementary to the appellant's, in which it is urged that the ordinance of 1881 was invalid by reason of certain provisions, and therefore was never carried out by the bureau of surveys. With the validity of the ordinance we are not concerned in this case, but there is no room for question as to the law. The entire authority and control over the subject are in councils, with no revisory power or independent discretion in the bureau of surveys : Wetherill v. Penna. R. R. Co., 195 Pa. 156. But the ordinances do not usually execute themselves. They direct what shall be done as in the case of the ordinance of 1884, by which the department is " authorized to revise the city plan," etc. Unless in some way, illegal or imperfect, obedience by the bureau can be compelled, but until the bureau has acted and put the new lines on the plan, the change is incomplete, and not fully effective. The usefulness if not necessity of completed action may be illustrated by the ordinance of 1881, which directs the department of surveys to place Chestnut street on the city plan between Fifteenth and Sixteenth streets " as widened six feet upon the north side thereof in such manner that the north line may conform to the line of houses now built," etc. Two of those houses

have already been altered and at any time the owners of others may rebuild on a line further back, so that in a few years the line as established by the ordinance conforming to the line of houses then built, will be no longer visible and may become a matter of question. The laying down of the lines however by the bureau of surveys on the city plan not only completes the change but makes it fixed and certain by official evidence for all future uses.

It is proper to say this much on the general law of the subject to avoid misunderstanding of the effect of the decision. But in the view we have taken of the ordinance of 1884, the ordinance of 1881, and the question as to the action upon it by the board of surveys are immaterial.

Decree reversed with directions to dismiss the bill with costs.

