Hasenflu, Appellant, *v.* Commonwealth.

Argued September 28, 1961.   Before BELL, C. J., MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Donald R. McKay,* with him *Wiesen, Cusick, Madden, Joyce, Acker & McKay,* for appellant.

*Frank E. Roda,* Special Assistant Attorney General, with him *Donald Blanken* and *Robert Cunliffe,* Assistant Attorneys General, *John R. Rezzolla, Jr.,* Chief Counsel, and *David Stahl,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 20, 1962:

The basic question raised on this appeal is whether the court below erred in refusing a new trial to the landowner in an eminent domain proceeding.

On September 2, 1954—the date of condemnation by the Commonwealth—John D. Hasenflu (Hasenflu) owned a three acre tract of land in Sharon, Pa. On this land four buildings were at that time located; a frame building used generally for office purposes, a large brick building used for storage and warehouse purposes, an eight stall brick garage of which seven stalls were used for Hasenflu's equipment and one stall as an employees' washroom and a four stall frame ga-

rage. Upon this land, Hasenflu, at that time and for some years prior thereto, conducted a retail coal and builders' supply business.

This irregular shaped land was bounded on the west by a public highway of the City of Sharon (known as Walnut Street), which ran generally north-south, on the north—separated by Erie Railroad tracks and right of way—a state highway then known as Pine Hollow Boulevard (Boulevard) and on the east and south by lands owned by persons other than Hasenflu. From the south Walnut Street approached the Boulevard at a steep downgrade and, at the intersection with the Boulevard, came to grade with Hasenflu's land; the Boulevard was generally at grade with Hasenflu's land.

On September 2, 1954, the Governor of the Commonwealth approved a condemnation and construction plan which provided for the widening and reconstruction of the Boulevard henceforth to be known as Shenango Freeway (Freeway). Under this plan, Walnut Street was to be located a short distance to the west and to form in part Sharon Bypass (Bypass). *This plan was approved by an ordinance of the City of Sharon* under the provisions of the Act of June 1, 1945, P. L. 1242, 36 PS §670-523.

Hasenflu petitioned the Court of Common Pleas of Mercer County for and a board of view was appointed. After hearing, the board of view awarded Hasenflu $52,825 and from that award both Hasenflu and the Commonwealth appealed. After a trial before Judge HERMAN M. RODGERS and a jury, the jury returned a verdict against Hasenflu and in favor of the Commonwealth. A motion for a new trial having been refused and a judgment entered on the verdict, Hasenflu filed this appeal.

In support of its argument that he is entitled to a new trial, Hasenflu urges: (1) that the verdict is against the evidence and (2) that the trial court erred:

(a) in certain rulings on evidence; (b) in its instructions to the jury; (c) in refusing permission to take the deposition of a juror who took notes throughout the trial which were taken into the jury room.

Was this verdict contrary to the evidence? To understand Hasenflu's argument in this respect the respective contentions of both Hasenflu and the Commonwealth must be made clear. Hasenflu contends: (1) that, by reason of the condemnation and new construction, the Commonwealth *rounded* the northwestern corner of his land from the Freeway to the Bypass and, in so doing, actually took a portion, approximating 210 feet in area, of this land; (2) that Walnut Street at its intersection with the old Boulevard has been closed and, thus, a reversionary interest in one-half of that which had previously been the public highway known as Walnut Street as it adjoined the Hasenflu property has been partly taken. On the other hand, the Commonwealth contends: (1) that, while the corner was rounded from the Freeway to the Bypass, no taking had been effected because that *corner had always been rounded* and the area now claimed to have been taken had previously been dedicated to the public use; (2) further, that, since the City of Sharon had not legally vacated Walnut Street by the passage of an ordinance, that street had not been *legally* vacated so that no damage resulted to Hasenflu's alleged reversionary interest.

The trial court permitted the jury to pass upon the question whether there had been a taking by the Commonwealth of any portion of the northwestern corner of Hasenflu's land. *On the state of this record* the trial court, in this respect, erred. Whether there had been a taking of this corner depended upon whether, prior to September 2, 1954, this corner was *square* or *rounded*, and, if the latter, whether Hasenflu, or a predecessor in title, had, by act or deed, dedicated that portion of the land utilized for rounding the corner to the pub-

lic use. In support of his contention that the corner was *square,* Hasenflu offered in evidence his title deed with its metes and bounds description of the land supplemented by the testimony of an engineer named Harris who, in accordance with the deed description, had prepared a map which *clearly* indicated the corner was *square* and not *rounded.* In an attempt to prove the corner was *rounded,* the Commonwealth relied on three evidentiary supports: (1) several maps, produced during Harris' cross-examination, outlining a Boulevard construction *proposed* some years prior to 1954 which maps portrayed the corner as *rounded;* (2) an exception contained in a deed in the line of Hasenflu's title which provided a right of way for a projected Pine Hollow Boulevard starting at a point on the "easterly side of Walnut Street" and then running eastward which exception the Commonwealth contended included the corner allegedly taken in this condemnation; (3) a map prepared by the Erie Railroad and attached to an agreement between the Erie Railroad and Hasenflu which gave the latter a right of way from the Freeway to the northeastern corner of the land across the railroad's right of way. The inherent difficulty in the Commonwealth's position is clear from a scrutiny of this record. As to (1), supra, in the absence of proof of authenticity or adoption of the maps, these maps were never received in evidence and are not part of the record. As to (2), supra, the evidence stands uncontradicted that the right of way set forth in the deed exception was *north* of, not *south* of, the railroad right of way and Hasenflu's land is *south,* not *north,* of the railroad right of way. Moreover, the engineer Harris projected mapwise the description of the land conveyed in the deed and rendered graphic the mislocation by the Commonwealth of the excepted right of way. Lastly, Hasenflu's witnesses Baines and Turner—the latter having dedicated the land for some distance eastward

from and beginning at Walnut Street for the Boulevard prior to 1954—outlined how the Boulevard construction had been initiated. On the other hand, the Commonwealth relied exclusively on the language of the exception in the deed but *completely failed to tie in such exception to the northwestern corner of the Hasenflu land.* As to (3), the map attached to the Erie-Hasenflu agreement does show a *rounded* corner but this agreement was executed *after,* not *before,* the condemnation.

Under such circumstances, the *sole* evidence was that the northwestern corner had been square and taken. All the Commonwealth produced was conjecture and surmise. To sustain the jury's finding in the absence of any evidence of a taking was patently erroneous; there was no evidence to justify such a finding. The verdict of the jury was obviously against the evidence in this respect.

The trial court, inter alia, instructed the jury: "And I say to you at this time that there is no evidence in this case that there has been any abandonment or closing of Walnut Street as a legal matter. There may be a physical closing which you can see with your own eyes; but as far as a legal closing of it, there is no evidence in the case of that."

Prior to the date of condemnation and, even after that date, until the date of actual construction of the Freeway and Bypass, Walnut Street was an open public highway of the City of Sharon from the Boulevard on the north to Prindle Street on the south. The construction plans provided that south of the Freeway-Bypass intersection Walnut Street was to be barricaded. After the construction was completed, south of the intersection there was not only a wooden barricade across Walnut Street but other impediments to vehicular traffic; a concrete sluiceway or gutter running northeast to southwest to the barricade, concrete steps

leading from a point near the barricade to the Bypass providing for pedestrian traffic to reach the intersection, a traffic standard and street light together with a curbing across the former street entrance. *The photographs reveal beyond question that Walnut Street is completely closed to vehicular traffic from the intersection for some distance south;* even the engineer of the City of Sharon so admitted. It is most difficult to understand the attitude of the Commonwealth in this respect; rather than admit the obvious closure for all practical purposes of Walnut Street and defend upon the ground that no vacation of the street had taken place legally, the Commonwealth weakened the integrity of its argument by contending that there has been no physical closure of this street, an argument clearly and completely at variance with the existing factual situation. As the trial court recognized, there was an actual physical closing of this street.

The plan of construction contemplated by the Commonwealth clearly sets forth the erection of a barricade on Walnut Street, the purpose of which obviously was to prevent vehicular traffic from progressing north from Walnut Street into the newly constructed Freeway and Bypass. *That plan was not only submitted to but approved by the City of Sharon by passage of an ordinance by the City Council.* Such municipal approval embraced both the general over-all plan of construction and all its details, particularly where the plan effected any change in, or revision of, existing municipal highways. By such councilmanic action the City not only approved the plan but became responsible for certain costs in completion of the plan. Under such circumstances to hold that this portion of Walnut Street was not *legally* vacated is to ignore the realities of the situation. Nonuser in the future of that portion of Walnut Street was brought to the attention of the municipal authorities and was approved by councilmanic ordinance.

Despite this approval by councilmanic action of the construction plan one of the details of which would close a portion of Walnut Street, the Commonwealth argues that, before a legal vacation of any portion of Walnut Street could take place, the City council had to pass an ordinance specifically declaring the vacation of the street. As a general rule such councilmanic action is requisite but our courts have very soundly recognized exceptions to this rule: *Wetherill v. Pennsylvania Railroad Company*, 195 Pa. 156, 45 A. 658; *Carpenter v. Pennsylvania Railroad Co.*, 195 Pa. 160, 45 A. 685; *Butler Street*, 25 Pa. Superior Ct. 357. The instant factual situation is an exception to the rule. Here we have municipal approval by ordinance of this plan of construction which portrays a closing of a portion of Walnut Street followed by an actual physical closing of such portion of the street. Both clearly manifest the municipal will. In charging the jury that there was no evidence of a "legal closing" of this portion of Walnut Street the trial court erred.[1]

Since a new trial must be had, certain questions raised on this appeal should be considered.

It is well settled that a defendant, during the presentation of the plaintiff's case, cannot introduce at that time his defense: *Kline v. Kachmar*, 360 Pa. 396, 61 A. 2d 825; *Hughes v. Westmoreland Coal Co.*, 104 Pa. 207, 213. Hasenflu contends that the cross-examination of the engineer Harris permitted the Commonwealth to violate this rule. We have examined the instant record and find that such cross-examination did not offend against our rule and that the cross-examination was contained within appropriate limits.

---

[1] The vacation of a public street does not constitute a taking of property: It merely "restores to abutting owners their portion of the land freed from the servitude of the public way": *Wetherill v. Pennsylvania Railroad Company*, supra, p. 160.

Hasenflu sought to introduce into evidence the cost of raising the building located on the northeastern portion of the land so that the floor of that building would equate the grade that existed prior to the taking, the cost of fill, of a retaining wall, of the removal and relocation of utilities, etc. The court below properly excluded such evidence. Hasenflu now argues that his examination sought to elicit not the *cost* but only the *fact* that such changes had to be made in the land as the result of the construction of the Freeway. However, an examination of the record definitely reveals that the questions addressed by Hasenflu's counsel sought to elicit the *cost* of such changes. The rule to which strict adherence must be given was recently set forth by this Court in *Gilleland v. New York State Natural Gas Corporation,* 399 Pa. 181, 185, 159 A. 2d 673: "Particular items of damage may be considered as facts, but their specific value may not be given, such as the cost of replacement or of fencing or of rebuilding or of removal or of alterations or the value of subsurface materials". In *Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 414, 158 A. 2d 541, we said: "It is the fact of such loss, not its actual statement in dollars that is the permissible element affecting damages."

Complaint is also made that the trial court permitted A. L. Moyer, an expert witness on value for Hasenflu, to be examined concerning the use of the brick building located on the northeastern corner of the land. Up to this point Moyer had testified that, in his opinion, the value of the land before condemnation was $127,500 and, after the condemnation, the land was valueless. Seeking to attack this witness' credibility counsel for the Commonwealth elicited, over Hasenflu's objection, the fact that this brick building was leased for five years to an industrial concern as a warehouse at a rental of $21,000. The court below well answered

this argument: "We believe that to do this [refuse to permit this line of cross-examination], would be to permit an expert witness to shut his eyes to the facts of life, and to give a wholly false valuation with the assurance that the court would protect him from any questions which would demonstrate his lack of credibility."

Next, it is urged that the trial court erred in not permitting R. V. Turner, a lay witness whose property was located directly across the Freeway from the Hasenflu land, to express an opinion as to the value of the land both before and after the condemnation. Generally testimony of lay witnesses who possess no special qualification in the field of real estate valuation should not be received. We have examined the attempted efforts of Hasenflu to qualify Turner and are satisfied that the trial court very properly excluded Turner's testimony as to value.

Two witnesses for the Commonwealth, Herbert Gilg and J. C. R. Kelly, were limited in their testimony to the value of the land *after* the condemnation. Both witnesses, although they had not been *on* the land prior to the date of condemnation, were generally familiar with the land and the condition both *after* and *before* the condemnation. With the exception of a new building erected on the land and the situation as to access to the property, both conditions were the same. We believe that the court unduly restricted the testimony of these witnesses. An examination of their qualifications would indicate they should have been permitted to testify to the value both *before* and *after* the condemnation.

In summary: (1) there is no issue of fact whether the Commonwealth has taken approximately 210 feet of the northwestern corner of Hasenflu's land: it has; (2) there is no question that a portion of Walnut Street has been legally vacated. What, if any, damage

has been suffered by Hasenflu from the taking of his land and the vacation of a portion of Walnut Street are matters which remain under appropriate court instruction to be determined by a jury.

In view of the conclusion which we have reached that a new trial must be granted we need not consider Hasenflu's other contentions.

Judgment reversed and new trial awarded.

Justice ALPERN took no part in the consideration or decision of this case.